<hr />

AULTMAN, MILLER & Co. v. THEIRER.

1. **Warranty:** SALE OF PERSONAL PROPERTY. The buyer of a chattel, under a contract of warranty, may, on the ascertainment of a breach thereof, return the article to the seller, or retain it and recoup the damages for the defect from the amount of the recovery in an action by the seller for the price.

2. —— Where, by the terms of warranty in the sale of a reaping machine, the buyer was limited to a certain period of use for purposes of trial of the machine, and was to give notice of defects in case it failed to work as warranted, it was *held*, the buyer having given notice as required, that, while his subsequently continuing to use the machine deprived him of the right of returning it or

setting it aside and recovering the amount paid, it did not estop him from reducing the amount of the recovery by the damages sustained by him on account of the defects.

*Appeal from Blackhawk Circuit Court.*

THURSDAY, JUNE 20.

ACTION upon a promissory note for $100. Defense, that the note was given for a reaping and mowing machine, which was warranted by plaintiffs, and that the warranty was broken.

Jury trial. Verdict and judgment for defendant. Plaintiffs appeal. The necessary facts appear in the opinion.

*Boies, Allen & Couch* for the appellants.

*O. C. Miller* for the appellee.

DAY, J. — The note in question was executed in part consideration of a Buckeye reaper and mower, sold to defendant by the plaintiffs' agents, under a printed warranty as follows: "The Buckeye reaper and mower is warranted to cut, if properly managed, one acre per hour, or ten or twelve acres per day, either grain or grass, in a workmanlike manner, with one pair of horses. The purchaser is allowed to cut two acres of grass, and also two acres of grain on trial, and, in case any thing proves defective, due notice must be given to us or our agent, and time allowed to send a person to put it in order. If it does not work after this, and the fault is in the machine, it will be taken back, or that part of it which proves to be defective, and will be replaced, or the money paid for it refunded." The defendant testified as follows: "I gave an order for the machine to Charles Sieber. Bought it of Hunt & Howland, plaintiffs' agents at Cedar Falls, and gave them the note. The machine did not cut wide enough in grain;

one horse and one wheel of the machine run over the buts of the bundles; the reel did not bring the grain back on to the platform, but dropped it in front of the machine; we could not make it work going with the wind. ' Soon after starting we sent for Sieber, told him to write to Hunt & Howland that the machine would not work; he did so, and sent the letter to the post-office by Miller's boy. I saw Hunt & Howland after harvest; they said they got the letter, but were too busy to come out. I could not cut over four acres a day with the machine and four hands; cut grain about two weeks with the machine that year; sent word to Hunt & Howland the second day we used it; I finally threw away the machine and bought a new one; have farmed it about seventeen years; it was worthless as a grain-cutting machine; had cut about two acres before I sent for Sieber; when I saw Hunt, he said he could fix it; that I should keep it, and if I could not make it work I need not pay the last note; next year he brought out new arms, and we put them on, and it worked worse than before; after that harvest I saw Hunt & Howland; told them I could not keep the machine; they said they would put on improvements next year; we put them on, but could not make it work; I cut about two acres that year and laid it aside; I got the machine two years ago last harvest; I cut with it the first year thirty-five acres of wheat and ten acres of oats; cut all my harvest; next year I cut with it forty-five acres of wheat and ten of oats; I cut grass with it both years, about ten or twelve acres each year; cut about five acres of grass with it the first year before harvest; it worked well in grass; I kept right on using the machine after we sent the letter to Hunt & Howland until I was through harvest; the machine is now at my house; it took me two weeks to get through harvest first year, and about same length of time next year." The defendant introduced other evidence tending to show that

the reaper in question was worthless as a grain-cutting machine.

The action of the court mainly objected to consits in the giving of the following instructions, to wit: "The defendant might have set the machine aside, and have waited for the agent of plaintiffs to come and fix it; and if he chose he could go on and use the machine to the best of his ability, and in so doing he lost his right to abandon his privilege to set the machine one side and recover back the price, and he becomes liable to pay for the machine at the contract price, subject to be reduced by the damages which he has shown he has sustained, by reason of the defects in the machine."

Appellant insists that if defendant cut more than two acres of grass or of grain before notifying plaintiff of defects, or if he continued to use the machine after such notice, he thereby violated the express terms of the warranty, and is estopped from claiming any thing thereunder. We think the court rightly instructed upon this point. The warranty is not a conditional one, as in *Bamberger, Wright & Co.*, v. *Greiner*, 18 Iowa, 477. It is absolute, " The Buckeye reaper and mower is warranted to cut, if properly managed, one acre per hour or ten or twelve acres per day, either grain or grass, in a workmanlike manner, with one pair of horses," What follows provides the terms under which the machine, or the defective parts will be taken back, and the money refunded.

Where there is a breach of warranty, the vendor may return the article purchased, and recover the price paid, or he may retain it and recover the damages consequent upon the defect. If the defendant in this case, owing to the terms of his contract could not pursue the former course, he may, nevertheless, follow the latter. This the instruction given permitted. The other instructions, of which complaint is made, involve the same principle, and need no further notice.

III. It is claimed that the verdict is not supported by

the evidence; that the price of the machine, as a mower alone, is $160, and that but $125 has been paid.

Fred. Herman testified: " Bought reapers and mowers; would not have this if you gave it to me; I got a mower for $40, that I put on my reaper; I don't know the cash value of this machine, think it was worth as much as I paid for mine." Karl Muller testified that the grain part of this machine was worthless; the mower may have been worth $100; it may have been worth more or less. H. C. Hunt testified that the market price of the Senior mower (the size defendant had), without the reaping attachment, was $160. W. G. Barnes testified: " Think we sold the Senior for $135, and Junior for less." From this testimony we think the jury were fairly warranted in finding that the *value* of the mower did not exceed the amount paid.

We have considered all the errors urged in the argument, and are of opinion that the judgment should be

Affirmed