Myer & Dostal v. Wheeler & Co.

## MYER & DOSTAL v. WHEELER & CO.

1. **Sale:** OF BARLEY BY SAMPLE: WARRANTY: FACTS CONSTITUTING: DIVISIBLE CONTRACT: RESCISSION OF. Plaintiffs sold to defendants ten car-loads of barley, like sample, to be delivered from time to time on track at C., for transportation to D., where defendants resided. Defendants were to pay seventy cents per bushel for each car-load when so delivered. Defendants had never seen the barley. Upon receipt of the first car-load, defendants refused to pay for same, because it was not equal to sample, but informed plaintiffs that they had given them credit for sixty-five cents per bushel therefor, and that they would withhold payment until the ten car-loads were delivered. They also urged them to ship the remainder of the barley, and promised to honor their drafts for future shipments. Plaintiffs refused to ship any more barley on the terms proposed, but offered to continue the shipments if the first car-load was paid for. *Held* (1) that the contract amounted to an express warranty that the barley should be equal to the sample; (2) that the contract was severable, and that the refusal to pay for the first car-load did not entitle plaintiffs to rescind, and to refuse to deliver the other car-loads; (3) that plaintiffs were entitled to recover for the actual value of the car-load delivered, and that defendants were entitled, on their counter-claim, to recover damages for the failure to deliver the other nine car-loads. BECK, J., *dissenting*.

2. ———: WITH AND WITHOUT WARRANTY: EFFECT OF KEEPING INFERIOR GOODS. Where goods are sold without warranty, to be paid for on delivery, and the goods prove inferior, if the vendee elects to keep them, he must pay the contract price; but, if sold with warranty as to quality, and the warranty fails, the vendee may keep the goods, and, when sued for the contract price, may by way of counter-claim set up and recover his damages for the failure of the warranty. See authorities cited in opinion.

3. ———: DIVISIBLE CONTRACT: RESCISSION FOR BREACH. The rescission of a divisible contract will not be allowed for a breach thereof, unless such breach goes to the whole consideration. See authorities cited in opinion.

4. ———: FOR FUTURE DELIVERY: FAILURE TO DELIVER: MEASURE OF DAMAGES. Where grain was sold to be delivered in the future, the measure of damages for non-delivery was the highest market price at the place of delivery between the date when it should have been delivered and the date of beginning suit to recover the damages.

*Appeal from Scott Circuit Court.*

THURSDAY, DECEMBER 11.

PLAINTIFFS brought this action to recover the price of a car-load of barley. They allege in their petition that they contracted with defendants to sell and deliver to them on track, at Calmar, Iowa, ten car-loads of barley, at seventy cents per bushel,—said barley to be of substantially the same quality as certain other barley which they had theretofore sold to defendants,—and that, in pursuance of said contract, they delivered to defendants one car-load of barley, of the value of $343.87, and that defendants refused and neglected to pay for the same on demand, as they were bound to do by the terms of said contract; and they allege that by this refusal defendants abrogated and rescinded the contract, and released them from the further performance of the same; and they pray for judgment for said amount. Defendants admit the making of the contract for the sale and delivery by plaintiffs to them of ten car-loads of barley, but allege that the same was to be like a sample of barley which plaintiff had previously sold to them at Davenport, and that they were to pay for the same when received in Davenport; and they deny that by any failure on their part to pay for said car-load of barley they rescinded or abrogated said contract, or released plaintiffs from performing it; and, by way of counter-claim, they allege that said sale was with a warranty that the barley should be of like quality with the sample which they had formerly received from plaintiffs, and that the car-load delivered did not correspond with the sample, but was of inferior quality and of much less value, and that when they discovered this they refused to pay for or take the same at the contract price, and that plaintiffs thereupon refused to deliver the other nine car-loads, although requested so to do. By the judgment of the circuit court plaintiffs recovered for the car-load delivered, but a deduction of ten cents per bushel was made from the contract price on account of the inferior quality of the barley, and defendants were awarded damages for the non-delivery of the other nine car-loads. Plaintiffs appeal.

*Ellis, Murphy & Gould*, for appellants.

*Bills & Block*, for appellees.

REED, J.—The case was tried to the court, and there was a finding of facts. The facts established by the finding of the court, which we deem material to the questions argued by counsel, are as follows: Plaintiffs reside and are engaged in business at Calmar, in this state, and defendants are engaged in business at Davenport. Each of the parties is engaged in buying and selling grain. On the seventh of September, 1881, defendants had in their possession a sample of barley which plaintiffs had sent to them. On that day plaintiffs wrote defendants that they had contracted ten car-loads of barley like said sample, and offered to sell the same, or any portion of it, at seventy cents per bushel, delivered on board the cars at Calmar. On receipt of this letter, defendants telegraphed and wrote plaintiffs that they would take ten car-loads like the sample, at the price named. On receipt of defendants' letter, plaintiffs wrote them that they would "turn out the ten car-loads as fast as possible." This letter was written on the tenth of September. There had been a prior sale by plaintiffs of four car-loads of barley to defendants, in which plaintiffs had the right to deliver one or more car-loads at a time, and draw on defendants for the amount of each separate delivery at the time the same was made. It was understood between them that the ten cars should be delivered, and payments therefor should be made, in the same manner. No part of the barley was delivered until the twenty-first of September, when plaintiffs shipped one car, and drew on defendants for the value thereof at the contract price. Defendants had no opportunity to inspect the barley until it arrived at Davenport. They then found that it did not correspond in quality and condition with the sample. They therefore refused to pay the draft drawn on them by plaintiffs, and immediately wrote them informing them that the barley was not up to the

sample, and that its value was ten cents per bushel less than what it would have been if it had corresponded with the sample; also informing them that they would make an allowance of five cents per bushel thereon. They also informed them of their refusal to pay their draft, and stated that they gave them credit for the car-load of barley at five cents per bushel less than the contract price, and that they would retain this amount in their hands until the remaining nine car-loads of barley should be delivered. In a few days thereafter they again wrote plaintiffs, informing them that they would pay their drafts drawn against future shipments, but reiterating their determination to retain in their hands the amount due on the car-load in question until all the barley should be delivered. Plaintiffs answered these letters, refusing to assent to this arrangement, and urging defendants to send them the amount due for the car-load delivered, and informing them that they would not deliver any more barley until this was done, but expressing a willingness to deliver the balance if this amount was paid. There had been a material advance in the meantime in the market value of barley, and no further deliveries have been made by plaintiffs under the contract.

On these facts the circuit court found, as conclusions of law: (1) that there was an express warranty or agreement that the barley to be delivered should be equal to the sample, for the breach of which defendants are entitled to damages; (2) the failure to offer to return the car-load delivered did not affect the defendants' right to sue for a breach of the agreement or warranty; and (3) the failure to pay for the car-load delivered was not a rescission of the contract, and did not entitle plaintiffs to rescind it. Exceptions are taken by plaintiffs to these conclusions.

I. Plaintiffs' position as to the first and second conclusions is that, as the contract between the parties was wholly executory, to deliver the barley from time to time in the future, no particular barley being specified, the stipulation as to quality is in no proper sense a warranty; that it is an inte-

gral part of the contract to sell and deliver the barley, and not an undertaking collateral to that, which survives the delivery of the property in pursuance of the contract; and the failure of plaintiffs to deliver barley of the stipulated quality, while it is a breach of their contract, does not constitute a failure of warranty, and consequently, as defendants retained the property, and did not offer to return it, they are now bound to pay the contract price.

We think, however, that the finding of the circuit court that, as to the barley delivered, there was a warranty that it should correspond in quality with the sample, is correct. The parties contracted with reference to the sample. Plaintiffs represented that they had ten car-loads, which was like the sample in quality; and they offered to sell the same to defendants at a certain price, and defendants agreed to take that quantity like the sample at the price named. Defendants had no opportunity to inspect the grain until it arrived at Davenport, and they had incurred the cost of transporting it to that point. Plaintiffs' representation as to the quality of the grain was made for the purpose of inducing defendants to enter into the contract, and they relied upon it, and were influenced by it to make the purchase. Defendants having been induced by these representations to enter into the contract, and the delivery of the car-load in question having been made under these circumstances, plaintiffs must be held to have warranted that the grain corresponded in quality with the sample. If there had been no warranty of the property, defendants, if they elected to keep it, would have been bound to pay the contract price. This is the well-settled rule in such cases. See *Reed v. Randall*, 29 N. Y., 358; *Gaylord Manuf'g Co. v. Allen*, 53 Id., 515; *Dounce v. Dow*, 64 Id., 411; *Gilson v. Bingham*, 43 Vt., 410; *Allison v. Vaughn*, 40 Iowa, 421. But it is equally well settled in this state that, where there has been a warranty of the quality of the goods, and a failure of such warranty, the vendee may retain the property and sue on the warranty. *Aultman v.*

*Theircr*, 34 Iowa, 272; *Rogers v. Hanson*, 35 Id., 283; *McCormick v. Dunville*, 36 Id., 645; *King v. Towsley*, 64 Id., 75.

II. Plaintiffs contend that defendants, by refusing to pay for the car-load of barley in question, on its delivery, rescinded the contract and released them from the duty of delivering the balance of said barley. That the retention by defendants of the amount due for the car-load of barley delivered was a violation of the terms of the contract cannot be denied. By the agreement between the parties plaintiffs had the right, on the delivery of any portion of the barley on the track at Calmar, to draw on defendants for the value of the amount so delivered, and defendants undertook to pay their drafts for such amounts when presented. A controversy arose, it is true, as to the amount which was due for the car-load in question, but they were not thereby released from the obligation to pay, or, at least, offer to pay, the amount which they admitted was due thereon. By their attempt to retain this amount until the delivery of the balance of the grain, they asserted a right with reference to the subject of the contract which it did not confer upon them, and one to which the other party never assented. We are of opinion, however, that the contract was not rescinded by the refusal of defendants to pay the amount due at the time, when, by its terms, they ought to have paid it, and that plaintiffs were not thereby released from a performance of the unperformed portions of the contract. The contract was severable. When plaintiffs delivered the car-load in question on the track, the contract was thereby so far performed that the rights and obligations of the parties with reference to that car-load were fully established under it. They had then performed one of the series of acts which they undertook to perform, and they were entitled under the contract to compensation for that act. They thereby performed a specific portion of their undertaking, and were entitled, by virtue of the contract, to a definite and certain portion of the consideration, and were in a position

to enforce the payment by defendants of that portion of it; and their right in that respect was not at all dependent on the performance, either by themselves or defendants, of the other conditions of the contract.

Defendants were not in default as to the unexecuted portions of the contract. Nor did it appear that they ever would be in default as to them. They expressed a willingness to pay for the other nine car-loads as they should be delivered, and there is no claim that they were not able to perform their undertaking in that regard. They did not refuse absolutely to pay for the car-load which was delivered, but claimed the right to retain the price until the others should be delivered, and as security for the performance of the contract by plaintiffs. It was not understood when the parties entered into the contract that plaintiffs were dependent for the means to purchase the subsequent car-loads on the money which they would obtain for those first delivered. Nor is it shown that they were so dependent. We think, therefore, that the circuit court rightly held that plaintiffs were liable for the damages occasioned by their failure to deliver the remaining car loads. The rule established by the decided weight of authority, both in England and in this country, is that rescission of a divisible contract will not be allowed for a breach thereof, unless such breach goes to the whole of the consideration. *Freeth v. Burr*, L. R. 9 C. P., 208; *Mersey Steel & Iron Works v. Naylor*, L. R. 9 Q. B. Div., 648; *Simpson v. Crippin*, L. R. 8 Q. B., 14; *Newton v. Winchester*, 16 Gray, 208; *Winchester v. Newton*, 2 Allen, 492; *Sawyer v. Railway Co.*, 22 Wis., 403; *Burge v. Cedar Rapids & M. R. R. Co.*, 32 Iowa, 101; *Hayden v. Reynolds*, 54 Id., 157. See, also, the collection of authorities on the subject in the note of Mr. Lucius S. Landreth to the case of *Norrington v. Wright*, 21 Amer. Law Reg., 395.

III. On the trial, defendants, for the purpose of proving the damages which they had sustained by the failure of plaintiffs to deliver the nine car-loads of barley, were permit-

Myer & Dostal v. Wheeler & Co.

ted to produce the market value of barley at Chicago, St. Louis and Davenport. Plaintiffs complained of the ruling admitting this testimony. Their position is that the damages should be assessed with reference to the value of the barley at the place where it was to have been delivered. Conceding this claim, they were not prejudiced by the ruling. The court found, specially, that, while there was no regular market for barley at Calmar, it was worth eighty-five cents per bushel on the track at that place, between the date when plaintiffs ought to have made the delivery and the commencement of the action, and assessed the damages with reference to this finding. We think the judgment of the circuit court is right, and it is

AFFIRMED.

BECK, J., *dissenting.* I. The selling of goods by sample is not strictly a warranty of their quality, though the books sometimes so speak of it. The agreement as to quality, indicated by the sample, is a part of the contract of sale, not a sale and contract of warranty collateral therewith. A vendor sells a car-load of wheat as No. 2, which the buyer has not seen. The designation No. 2, indicating the quality of the wheat, is a description of the grain; it is not a warranty. So, if the seller presents a sample of the wheat, it is simply another method of describing it. In either case, if the wheat does not correspond with the description, the purchaser may not accept it on the contract, for it is not the wheat he bought. Of course, if he does accept it in such a manner, or under such circumstances, as will not be regarded as an admission that the wheat is of the quality described, he is liable for only the market value of the wheat.

II. Under the facts found by the court, defendants were to pay for each load of barley as it was delivered on the track at Calmar. They refused to pay anything for the load delivered, and proposed to keep it or its price " as a margin," in order to enforce the contract of sale. This was a refusal by

defendants to perform the contract, and authorized plaintiffs
, to decline to deliver more barley.

In my opinion, upon the facts found by the circuit court,
the plaintiffs are entitled to recover judgment for the market
value of the barley delivered. Defendants are entitled to
recover nothing for the failure of plaintiffs to deliver the
other barley sold by the contract. In my opinion, the judg-
ment of the circuit court ought to be reversed.