|96  319|
|100  258|

GEORGE D. HOFFMAN, Appellant, v. THE INDEPENDENT DISTRICT OF HAMPTON.

**Burden of Proof:** WARRANTY. A heating apparatus was sold with
1  warranty. Part of the price was to be paid when the job was
completed, and the balance was to be paid the following spring
"providing said apparatus works in accordance with guaranty."
2  The part payment was made. It was put in so early that it could
not well be used at once. The seller sued to recover the deferred
3  payment. *Held*, the burden was upon the buyer to plead and
prove the warranty was broken. *Wernli v. Collins*, 87 Iowa, 549;
*Jackson v. Creswell*, 94 Iowa, 713; *Elliott v. Caldwell*, 45 N. W.
Rep. 845, and *Bell v. Harvey*, 14 N. W. Rep. 699, *distinguished.*

**Rescission:** WARRANTY. One who seeks to recover the purchase
4  price paid on account of a breach of warranty must show a
return or offer to return. Therefore, it was error to charge that
it could be recovered back if an apparatus did not work accord-
ing to warranty, without fault on the buyer's part.

*Appeal from Franklin District Court.*—HON. B. P. BIRD-
SALL, Judge.

THURSDAY, DECEMBER 12, 1895.

Action at law upon a contract to recover the unpaid portion of the purchase price of certain heating apparatus. The defendant denies liability, and by counterclaim seeks to recover the amount of the purchase price paid, with interest. There was a trial by jury, and a verdict and judgment for the defendant for the sum it had paid. The plaintiff appeals.—*Reversed.*

*John M. Hemingway* for appellant.

*W. D. Evans* for appellee.

Robinson, J.—The contract upon which this action is brought consists of a proposal in writing by the

plaintiff to furnish and erect in the public school building in Hampton a first-class combination warm air and steam-heating apparatus, and an acceptance by the defendant. Portions of the proposal relevant to the determination of the case are as follows: "Heater. I will furnish and place in proper location in basement two No. 20 Economy steam and warm air combination heaters, and guaranty the same to be of sufficient capacity to furnish warm air and steam for registers and radiators hereinafter mentioned and described. * * * The work to be completed and left in good running order by Sept. 1st, 1892." "Smoke Flue. The owner of the building must provide good and sufficient smoke flue for boiler, of not less than ten inches in diameter, inside measurement." "Price and Terms of Payment. The consideration for the above work as specified will be two thousand and sixty-five dollars ($2,065.00), due and payable as follows: eight hundred and sixty-five dollars when the job is completed according to contract; six hundred dollars Apr. 1st, 1893, provided said apparatus works in accordance with guaranty given by said Hoffman; six hundred dollars June 1st, 1893, on same terms and conditions." "Guaranty. The system will be a combination of steam and warm air and in consideration of the prompt payment of the above sum as specified we will guaranty the same to work free and without noise, and to heat all rooms and halls in which radiators are placed to a temperature of 70 degrees Farh. in the coldest winter weather." "It is understood and agreed that all doors, windows, and other outside openings shall be properly constructed and protected, and that the heater shall be supplied with good coal and proper attention." The plaintiff furnished and erected a warm air and steam-heating apparatus, and claims to have performed the contract on his part. On the eleventh day of September, 1892, the first payment of

eight hundred and sixty-five dollars was made, but the defendant denies that the heating apparatus furnished satisfies the contract, and as an affirmative defense alleges that the apparatus furnished is not first class, but is inferior, and worthless; that it will not warm the rooms and halls for which it was designed to the temperature required by the contract, nor to a temperature suitable for the occupying of the rooms. The defendant furthers avers that it never accepted the apparatus, but rejected it because it did not comply with the contract, and that it was at all times subject to the order of the plaintiff; that he neglected to remove it from the building, and that it was, with the building, destroyed by fire on the fifteenth day of February, 1893, without fault on the part of the defendant. The counterclaim is based on substantially the same facts as are relied upon as an affirmative defense, and upon the making of the first payment.

I.   The district court placed upon the plaintiff the burden of proving not only that he had furnished the heater and appurtenances and performed the labor required by the specifications of his contract, but that the requirements of the guaranty had been complied with, and that the apparatus furnished worked free and without noise, and heated the rooms and halls in which the radiators were placed to a temperature of 70 degrees Fahrenheit in the coldest winter weather, under the conditions stated in the guaranty. In this we think there was error. The contract was for the furnishing of a heating apparatus according to the specifications given, and was apparently fulfilled when the heater and apparatus were furnished and put in running order according to the specifications. The guaranty was collateral to that undertaking. To establish a *prima facie* right of recovery it was only necessary for the plaintiff to show that he had furnished and performed all that was required by the

specifications, and that the agreed price had not been paid. If the apparatus supplied did not meet the requirements of the guaranty, and the defendant desired to take advantage of that fact, the burden was upon it to plead and prove it. The contract in terms provided for the payment of eight hundred and sixty-five dollars "when the job is completed according to contract," and the time of completion fixed was September 1, 1892. The defendant, by making the payment soon after the apparatus was furnished and placed in working order, indicated that it understood the contract to be completed. It is true that the deferred payments were to be made at the times specified, provided the apparatus worked in accordance with the guaranty; but that did not place upon the plaintiff the burden of showing that the apparatus worked as guarantied. It is the general rule that the burden of proof is on a party to show a particular fact upon which he relies, and of which he is supposed to be cognizant. *Swafford v. Whipple*, 3 G. Greene, 265; 2 Am. & Eng. Enc. Law, 656. The case of *Manufacturing Co. v. Root*, 54 N. W. (N. D.) Rep. 924, involved the sale of a binder with the warranty that it was well made of good materials, and with proper care and management was capable of doing as good work as any machine on the market. It was held that the warranty was a collateral agreement, that proof by the plaintiff that the machine was as warranted was not essential to a recovery of the purchase price, and that the burden was on the purchaser to prove a breach of the warranty. Cases cited by the appellee to sustain the charge of the court are clearly distinguishable from this case. In *Wernli v. Collins*, 87 Iowa, 549 (54 N. W. Rep. 365), it appeared that the plaintiff had undertaken to furnish a pump, tower, well, and the necessary conducting pipes, and

to furnish a good supply of water for stock. The contractor knew what stock was to be supplied, and undertook to furnish a good supply of water for it. The contract does not appear to have provided for a well of any designated size or depth; therefore no presumption arose from the mere digging of a well and the furnishing of the machinery and appurtenances that the contract had been fulfilled. The agreement to furnish the designated supply of water was in no sense a collateral undertaking. In the case of *Jackson v. Creswell*, 94 Iowa, 713 (61 N. W. Rep. 383), it appeared that the contractor had agreed to drill a well for the defendant which should furnish plenty of water, free from sand or other sediment, and pipe it to the rock. It also appeared that he failed to do as he agreed. No question as to the burden of proof to establish a *prima facie* cause of action or defense appears to have been involved in the case. However, it was not a case where the parties had agreed upon the exact amount of labor to be performed and the materials to be furnished, and no presumption that the contract had been performed could arise from proof that a well had been drilled and piped. The agreement that the well should be piped to rock, and that it would furnish plenty of water, free from sediment was not collateral to the chief undertaking, but was a part of it. That is true of the contract considered in *Burns v. City of Fairmont*, 45 N. W. (Neb.) Rep. 175. The plaintiff in that case had undertaken to furnish the defendant with a water supply of a given quantity, and the capacity of the work when completed was to be tested before the contract price was to be paid. There is nothing in the case of *Elliott v. Caldwell*, 45 N. W. (Minn.) Rep. 845, nor in *Bell v. Harvey*, 14 N. W. (Mich.) Rep. 699, also cited by appellee, inconsistent with the views we have expressed. We are not to be understood as holding that when apparatus of a

specified kind and quantity is furnished with a guaranty as to its quality and capacity that the contractor will be presumed in all cases to have fulfilled his contract upon proof that he has furnished apparatus of the kind and quality specified by his contract, and that the burden of proof to show a failure to perform it is upon the party who denies the performance. The parties may well stipulate as to the character and capacity of apparatus or machinery to be furnished or improvements to be made, and make affirmative proof of performance a condition precedent to the recovery of the contract price; but this was not a case of that kind. A part of the contract price was to be paid "when the job is completed according to contract," or, in other words, when the heaters and apparatus were furnished and placed in condition for use according to the specifications. That was in September, before it was possible to test the capacity of what was furnished. Possession and control of it was delivered to the defendant, who was expected to and did test its capacity, and the facts in regard to its performance were peculiarly within the knowledge of the defendant. Moreover, the guaranty was on condition "that all doors, windows and other outside openings should be properly constructed and protected, that the heater should be supplied with good coal and proper attention, and that the defendant should provide a good and sufficient smoke flue for boiler of not less than ten inches in diameter." We are of the opinion that under these circumstances the burden was on the defendant to show performance on its part, and the breaches of contract upon which it relies.

II. The appellant complains of the eleventh paragraph of the charge, which is as follows: "If you find by a preponderance of the evidence that the defendant

district did supply the heating apparatus with suitable smoke flues, and did properly construct and protect all doors, windows, and other outside openings, and did supply the heating apparatus with good coal and proper attention, and that, notwithstanding this, the said heating apparatus did not and would not heat the rooms and halls in which radiators were placed to a temperature of 70 degrees Fahr. in the coldest winter weather, then the defendant is entitled to recover the amount paid by it upon said contract, to-wit, $865, with interest at 6 per cent. from the date of its payment by defendant." The objection made by the appellant is that the facts of the case do not warrant this instruction, and we think that is true. We have seen that the apparatus was in the possession and under the control of the defendant. It had never refused to accept the apparatus, nor tendered it back to the plaintiff. There was much correspondence between the parties, and changes in the building and apparatus were made from time to time. The plaintiff claimed that the openings in the building were not properly protected; that the flues were insufficient, and that the heaters were not properly managed. The weather in December and January was very cold. On the twenty-sixth of January directors of the defendant inspected the apparatus, and notified the plaintiff that additional radiation was required, and specified the amount which, in their opinion, was needed to warm the building properly, and make good the guaranty. The plaintiff sent more radiators, the last about the sixth of February. They were in the building, but not in place, when the building was destroyed. It is shown that the heaters furnished were those required by the contract and that they were capable of supplying much more radiation than was attached to them, and in response to the

request by the defendant more radiation was furnished. The evidence in regard to the manner in which the apparatus was attached to the building is not satisfactory, and we are unable to state whether the apparatus should be treated as real or personal property; but, assuming that it should be regarded as of the latter class, and that conditions may have existed which justified its return by the defendant on the ground that it did not comply with the guaranty, still the evidence does not show beyond controversy that such was the case, and the court was not authorized to take that question from the jury, as it did in effect. The right of the defendant to return the apparatus was not fixed alone by its failure to comply with the guaranty. It is the rule that the vendee of personal property which has been sold with a warranty may rescind the contract by returning the property and recover the purchase price paid, or he may retain the property and recover damages for the breach of warranty. *Threshing Mach. Co. v. Haven,* 65 Iowa, 360 (21 N. W. Rep. 677). The defendant did not return the property, and could not keep it without being liable for its value, if not for the contract price. If it be true, as claimed by the defendant, that it never accepted the apparatus, and that it was at all times held as the property of the plaintiff, and at his risk, the fact should have been determined by the jury. The judgment of the district court is *reversed.*