AMERICAN FRUIT PRODUCT CO., Appellee, v. DAVENPORT
VINEGAR & PICKLING WORKS, Appellant.

APPEAL AND ERROR: Review—Instructions—Failure to Object
1  before Reading to Jury—Affidavit of Counsel. Failure to except specifically to instructions before they are read to the jury does not necessarily deprive one of the right to present such exceptions for the first time in a motion for a new trial. (Sec. 3705-a, Sup. Code, 1913.)  So held where counsel by affidavit showed: (a) that before the beginning of the argument he was permitted by the

court to hastily examine an incomplete draft of the instructions, but was given no opportunity to re-examine the completed draft, prior to the reading to the jury; and (b) that the error complained of was not discovered by him until too late to present the objection before the reading to the jury.

**SALES:** Warranties — "Warranty" and "Representation" Contrasted. A warranty, sometimes called a guaranty, is any clear and distinct affirmation of quality, (a) intended to induce the sale, and (b) relied upon by the buyer, thereby becoming annexed to the contract of sale, but collateral thereto—incident thereto. A representation is an antecedent statement, made to induce the sale, but which is not a term in or an element of the contract.

2, 6

> PRINCIPLE APPLIED: In a sale of vinegar, there was inserted in the written contract, as part of the consideration thereof, this clause: "Such vinegar is guaranteed to be 6 per cent, or 60 grains, in strength . . . ; also to comply with the national pure food laws." Later, there was added: "We guarantee it (60 grain vinegar) to contain the required amount of solids or constituents to comply with all state and national pure food laws when properly and accurately reduced to 40 grain strength by the addition of pure distilled water." *Held* to clearly constitute a warranty, and not a "representation", the record showing that it was intended to induce the sale. The court says: "*We must presume it was relied upon.*"

**SALES:** Warranties—Modification—Consideration—Sufficiency. The modification of the terms of a written warranty contained in two separate contracts is supported by a sufficient consideration when the modification is made (a) before delivery had been completed under the first contract or commenced under the second contract, (b) for the purpose of ending a controversy over the quality of the goods, and (c) to induce the vendee to continue to receive the goods.

3

**SALES:** Contract—Written Modification of Terms—Consideration. A written modification of the terms of a contract—for instance, in the warranty clause of a contract of sale—imports a consideration. (Sec. 3069, Code, 1897.)

4

> PRINCIPLE APPLIED: The vendor and vendee, in two separate contracts for the sale of vinegar, were in a controversy as to the quality of the goods. Part of the vinegar had been delivered under the first contract, but none under the second contract. To end the controversy and to induce the vendee to go on with the contract, a written modification of the warranty clause of the contracts was agreed to. *Held*, irrespective of the motives and

purposes of the modification, the *writing* itself imported a consideration—at least as to future shipments.

**SALES: Warranties—Breach—Express Warranty Surviving Acceptance of Goods.** An *express* warranty of the quality of goods survives the acceptance of the goods by vendee with knowledge of the breach of the warranty. Phrased differently, the right to recover damages for the breach of an *express* warranty survives an acceptance of the goods by vendee with knowledge that they do not comply with the warranty, and without notification to vendor of the breach.

> **PRINCIPLE APPLIED:** An *express* warranty read: "Such vinegar is guaranteed to be 6 per cent or 60 grains in strength . . . ; also to comply with the national pure food laws." Later, owing to a controversy as to the quality of the vinegar that was being furnished, this warranty was modified by attaching the following: "We guarantee it (60 grain vinegar) to contain the required amount of solids or constituents to comply with all state and national pure food laws when properly and accurately reduced to 40 grain strength by the addition of pure distilled water." There were two contracts, the second entered into before completed delivery had been made on the first. Commencing with the first delivery and continuing thereafter as to most of the shipments, the vendee sharply complained that the vinegar was not according to the warranty. Part of one shipment was returned. One shipment was wholly returned, at the vendor's request. All the remaining shipments *were retained by vendee without notification to vendor that the vinegar would not be accepted as complying with the warranty. Held,* the express warranty survived the vendee's retention of the vinegar—that vendee was not estopped by such retention to counterclaim for his damages.

**SALES: Warranties— "Warranty" and "Representation" Contrasted.**

*Appeal from Scott District Court.*—Hon. A. J. House, Judge.

SATURDAY, NOVEMBER 27, 1915.

THE plaintiff brought this action to recover the purchase price of certain carloads of vinegar, sold to the defendant. There was a verdict and judgment for plaintiff, and defendant appeals.—*Reversed.*

*Sharon & Higgins,* for appellant.

*Lane & Waterman,* for appellee.

WEAVER, J.—Plaintiff's petition alleges, first, a sale of 80 barrels of vinegar to the defendant, pursuant to a written contract; that said sale was made on or about December 19, 1911, but that the shipment was invoiced as of January, 1912; and that, of the agreed price of said vinegar, there remains due and unpaid the sum of $200. In a second count, plaintiff alleges the further sale to defendant of 5 other carloads of vinegar of 80 barrels each, pursuant to the terms of a written contract, and that, of the agreed purchase price, there is due and unpaid the sum of $2,258.34. In a third count, the defendant is charged with the alleged agreed price of a quantity of "Holly Brand Juice", sold to the defendant on its written order, to the amount of $239.07, which is also due and unpaid. In an amendment filed pending the trial, plaintiff further alleges that the shipments of vinegar for which payment is demanded were received, accepted and retained by defendant. The defendant admits the contracts mentioned in the petition and the sales made to it thereunder, as alleged by the plaintiff, but denies that the goods delivered were of the guaranteed quality. It pleads no payments upon the purchases in addition to those credited in the petition. It pleads, however, a counterclaim for damages, based upon an alleged warranty of the goods purchased and a breach thereof.

It is claimed by appellee in argument that defendant does not, in fact, allege any warranty of the goods, and at most alleges a failure of the goods to comply with plaintiff's representation or description. For reasons stated in a later paragraph of this opinion, the objection cannot be sustained. The plaintiff denied the counterclaim; and, upon the issues thus joined, there was a verdict and judgment for the plaintiff, and defendant appeals.

I. The written contract, declared upon in the second count, is attached as an exhibit to the petition, and is in the following form:

"TERMS OF SALE: 1% discount for cash in ten days; or net thirty days from date of invoice.

"The American Fruit Product Company, of Rochester, N. Y., hereby agrees to sell and deliver as hereinafter specified to The Davenport Vinegar & Pickling Works, of Davenport, Iowa, on track at seller's Mills in New York State, 1,000 barrels of A. F. P. Co. Brand Apple Vinegar, in carload lots of not less than eighty barrels, as follows:

"30% thereof before June 1st, 1912.

"30% thereof between June 1st and August 1st, 1912.

"20% thereof between August 1st and September 1st, 1912.

"20% thereof between September 1st and October 1st, 1912..

"And the said The Davenport Vinegar & Pickling Works hereby agrees to purchase and pay for said Apple Vinegar -14- cents per gallon, package included, in accordance with the terms above stated, and to receive said Apple Vinegar at the times and in the quantities above specified.'

"Such Apple Vinegar is guaranteed to be -6- per cent, or -60- grains in strength, and to be the product of apples; also to comply with the National Pure Food Laws. . . .

". . . The price is guaranteed against our own decline on any unfilled portion during period of this contract.

"Signed in duplicate this 17th day of Nov., 1911.''

The contract mentioned in the first count is not set out; but the evidence tends to show that it was identical with the one above quoted, as to terms and conditions of sale. It appears that the contract mentioned in the second count was entered into before the delivery of all the vinegar under the first contract for which payment is claimed in the case. Before any deliveries were made under the second contract, and after the delivery of the carload mentioned in the first count of the petition, the defendant notified plaintiff that the vinegar was not of the specified quality, and that chemical tests had shown it to be below the legal standard, and defendant would not undertake to put the product on the market. The

correspondence growing out of this complaint was voluminous. Plaintiff having expressed its willingness to deliver vinegar which, when reduced by a given proportion of water, would conform to the requirements of the Iowa pure food statute, defendant forwarded its duplicate copies of the written contracts, asking that such stipulation be inserted therein. To that request, plaintiff responded as follows:

"May 9th, 1912.

"We acknowledge receipt of your favor of the 4th inst., together with copies of your vinegar contracts with us, which we return herewith. We have no objection whatever in giving you a guarantee on the 60 grain vinegar that we ship you to apply on these contracts, but if we were to make any changes or additions to the contracts that have already been executed it would technically invalidate them, so to avoid any misunderstanding we can cover the subject by letter which will serve the same purpose and we believe will meet with your entire approval.

"The only guarantee that we can give you on *60 grain vinegar* is that *we guarantee it to contain the required amount of solids or constituents to comply with all State and National Pure Food Laws when properly and accurately reduced to 40 grain strength,* by the addition of pure distilled water. . . .

"You may treat this letter as a supplement to the existing contracts if you so desire and you may be assured that every gallon of vinegar we ship you will contain the proper amount of solids to reduce to your standard strength.

"Yours very truly,

"AMERICAN FRUIT PRODUCT CO.,

"W. F. Borncamp, Sales Mgr."

Other vinegar being ordered after the date of the supplemental contract, defendant again complained that chemical tests showed it to be substantially identical with prior shipments, which had been found unsatisfactory. Still other

shipments were found satisfactory, and so reported to plaintiff. Later defendant again complained that two carloads shipped in September, 1912, were materially below the agreed standard, and said, "We wish to advise you that we will not handle this kind of dope. We must have vinegar that will reduce to forty grains and still comply with the law after being reduced." After setting out in detail what it claimed to be a chemical analysis of the vinegar, defendant further said: .

"We wish you to understand right now that *it is useless for you to send us any more vinegar that is not A-1 and comply with the law after reduction to 40 grains.*

"If you are not in a position to furnish us this class of goods, notify us at once and we will discontinue the sale of cider vinegar and let our customers know why. We are at a loss to know what to do with the cars now on hand. If you would send us a vinegar unusually high in the two elements in which the other falls short, we might be able to work in this vinegar. We bought and expect to pay for a first class article and we are getting extremely tired of this 'working in'. We are not being paid for doing this and we do not intend to inconvenience ourselves to meet any drafts. If necessary, we could settle in full for the good vinegar we have used, but you have made matters very unsatisfactory for us. If you cannot get us the goods we have bought, we will pay for the good vinegar we have used and we will also find a place to dispose of the other vinegar, which does not come up to the standard, and we do not intend to sell it and leave ourselves liable either."

In November, 1912, plaintiff shipped defendant still another carload, upon receipt of which, defendant notified plaintiff by telegraph that the vinegar was "as murky as new cider and we cannot use it. Advise disposition of vinegar and what you intend doing about it". Plaintiff replied, asking a sample of the vinegar which was sent. On the next day, de-

fendant wrote plaintiff, confirming its telegram, and saying, among other things:

"This makes two cars that we have in our possession now, which we cannot use. Our floor space is limited and we have no storage room for goods that are not salable. We have taken in this goods and will do the best we can with it until you advise us what disposition you wish made of it. We cannot use it nor would not use it if you were to make us a present of it. The putting out of this goods to our trade would ruin our reputation."

Later, plaintiff acknowledged the defective character of this shipment, and asked that the car be reshipped to its address, and this was done. Later, plaintiff addressed a letter to defendant, as follows:

"Davenport Vinegar & Pickling Works,
    "Davenport, Iowa.
"Gentlemen :—
    "Your inquiries for prices on vinegar, addressed to Empire Cider and Vinegar Co., and the J. C. Beach Co., have been referred to us for attention. We own and operate these two mills, also six other mills in this state and presume you have taken the names of our constituent companies from some directory. After the trouble you have had with a few shipments of vinegar, the past season, we can appreciate fully your object in getting quotations from other mills, but we trust before placing your order for next season's requirements, you will reconsider the matter and give us an opportunity to make good our assertions that we can supply you with the right kind of vinegar, that is not only pure but satisfactory in every respect.
    "We are frank to admit that some of the shipments made you this past season do not bear out this statement, but we can say to you candidly that never in the history of our business have we experienced this same trouble with any other customer

and as we have previously stated, it is most unfortunate that you happened to be one of the very few who have received vinegar that was not up to our usual high standard of quality. Some of this trouble might have been avoided had the proper precautions been taken, but the last shipment of cloudy vinegar is apparently due to causes beyond our control and we are having a bacteriologist working on this proposition now and hope to eliminate anything like this in the future.

"Commending the above for your consideration and awaiting your further advices, we are,

"Yours very truly,

"AMERICAN FRUIT PRODUCT CO.,

"By W. F. Borncamp, Sales Mgr."

The foregoing matters and others of the same general nature (much of it being a pleading of mere evidence rather than of ultimate fact) are pleaded both defensively and as the basis of defendant's counterclaim for damages.   No attack by motion or demurrer was made upon the answer or counterclaim, and the court has been put to no little trouble to thread its way through the wilderness of material and ascertain the real essence of the controversy.

Reduced to briefest terms, the counterclaim is to the effect that plaintiff originally undertook to furnish vinegar to be of 6 per cent. or 60 grain strength, and that, when reduced with water equal to 50 per cent. of its volume, would produce a mixture which would comply with the national and state pure food laws; and that such agreement was later supplemented with another, by which plaintiff guaranteed that the product, when reduced to 40 grain strength, would comply with the said legal standards.   It is alleged, however, that the vinegar furnished did not comply with the guaranty, in that it did not contain the required proportion of the necessary constituent parts to make a product of the required standard; and that, as a result thereof, defendant suffered great loss and damage in injury to its trade and in labor and expense, for

which it demands recovery in the sum of $8,000. In an amendment to its counterclaim, defendant further alleged that the market value of the vinegar actually delivered by the plaintiff was but 5c per gallon.

We shall not attempt to review or state the evidence offered. It is sufficient to say that there was testimony tending to support the defendant's claim that much of the vinegar supplied by plaintiff under the contracts sued upon was below the guaranteed standard. That is, to put it in ordinary language, the vinegar furnished was not sufficiently strong to produce, when diluted with the stated proportion of water, a vinegar conforming to the legal standards. There was also testimony to the effect that the market value of the defective product so shipped to and received by the defendants was not to exceed 5c per gallon, and also that considerable labor and expense were incurred by defendant in handling the vinegar, and in blending and otherwise treating it to convert it into a product which could be legally put upon the market. Except the carload which was rejected in November, 1912, and part of the carload shipped to defendant on September 5, 1912, none of the vinegar appears to have been returned to the plaintiff, the remainder having been retained by the defendant.

That the pleadings, when fairly construed, present a jury issue upon the question of an alleged breach of the contract of warranty or "guaranty" of the quality of the vinegar sold, we cannot doubt; and that there was evidence on which the jury could find that the vinegar, or a large proportion of it, was not of the specified grade or quality and that defendant sustained thereby some degree of loss or injury, is equally clear. Such being the record, it became a matter of prime importance that the jury be correctly instructed upon the law applicable to commercial transactions of this nature. Appellant's chief complaint is that the court erred in its charge, and to these objections we now turn our attention.

II. Appellee argues that the instructions are not subject

to review in this court, because the defendant failed to except
thereto before the arguments were begun, as
required by the statute, Code Supp., 1913, Sec.
3705-a.

1. APPEAL AND
ERROR: review:
instructions:
failure to ob-
ject before
reading to
jury: affidavit
of counsel.

In the bill of exceptions, the trial court
certifies, among other things, "that all instruc-
tions given were duly excepted to by the party adversely
interested"; but sets forth no specific objections or exceptions.
The defendant filed a motion for new trial, in which specific
objections were made to paragraphs numbered 3, 4, 5, 6, 6½
and 7 of the court's charge; and the motion is supported or
accompanied by the affidavit of Mr. Higgins, one of appel-
lant's counsel, that, after the close of the evidence and be-
fore the beginning of the arguments to the jury, he was per-
mitted by the court to hastily examine an incomplete draft
of the instructions, and no opportunity was given him to
re-examine them prior to the reading thereof to the jury.   He
further swears that the errors of which he complains were not
discovered by him at the time of the trial, and not until it
was too late to present his objection thereto before they were
read to the jury.   The affidavit seems to comply with the
statute referred to, which provides that, "upon a showing in
a motion for a new trial that an error in such instructions was
not discovered by the party claiming the error at the time of
trial, such objections or exceptions may be made in the same
manner in such motion for a new trial".   Upon such record,
which is in no manner contradicted, it is not the province of
this court to say that counsel does not state the truth, or that,
if counsel did not discover the alleged error earlier, he ought
to have done so, and therefore deny him and his client the
benefit of the statute.   It may be true that this clause or
exception engrafted upon the statute opens an easy door of
escape from the consequences of failure to except to the charge
of the court before the cause is submitted, but such was un-
doubtedly its purpose.   The exceptions must be considered as
having been made in due time.

III. We now return to the plaintiff's contention that

2. SALES: warranties: "warranty" and "representation" contrasted.

appellant does not plead or prove a warranty, and that, therefore, the court was not required to charge the jury upon the law applicable to a case of alleged breach of warranty.

A warranty, as counsel correctly define it, is a statement or representation of quality or condition, made by the seller to induce the sale and relied upon by the buyer. Taking the definition as made, it would appear hardly open to reasonable doubt that plaintiff did warrant the character and quality of the vinegar which it undertook to sell; that the representation so made was intended to induce the sale, and was relied upon by the appellant. It is not necessary that the word "warrant" or "warranty" be used, to have that effect. Any clear and distinct affirmation of quality, intended to bring about or induce the sale and relied upon by the buyer, is all that is required; and when the representation is embodied in a written agreement of sale as part of the consideration furnished by the seller, it requires considerable hardihood on the part of such seller to say that it is nothing but a specimen of trader's rhetoric, mere words of boasting or praise, and not intended to be relied upon by the buyer. The representation was carried into the written agreement and made part thereof, and we must presume it was relied upon. The written contract of sale does not bind the seller merely to sell so many barrels of vinegar of some specified name or brand, but vinegar which the seller undertakes and "guarantees" is of a certain specified quality, which will bear a specified degree of dilution and produce a vinegar complying with the legal standard. The word "guarantee" is perhaps not used with technical accuracy, but it is a matter of common observation that, in common parlance, it is used and understood as the equivalent of warranty. That it was so understood by the parties and that appellee fully understood that appellant was relying thereon in purchasing and handling the vinegar is abundantly indicated by the correspondence over the deal, which continued at brief intervals

from the date of the contract down to the beginning of this action.

IV. Appellee takes the further position that what we have spoken of as the supplemental contract, made May 9,

3. SALES: warranties: modification: consideration: sufficiency.

1912, is of no force or effect, because it was made without consideration, and in any event it could affect only the further dealings of the parties under the second contract.

There is no apparent lack of consideration. The deliveries made under the first contract were not yet complete, and those under the second contract had not yet begun. Appellant had begun to challenge the vinegar delivered as being below the agreed standard as early as in March, 1912, and the objections had become so insistent and strenuous that, for the apparent purpose of putting an end to controversy and inducing appellant to go on with the contracts, appellee prepared and signed the paper of May 9, 1912, expressly providing that it should be treated "as a supplement to the existing contracts", restating the quality of vinegar to be furnished, and saying, "You may be assured that every gallon of vinegar we ship you will contain the proper amount of solids to reduce to your standard strength." This appears to have satisfied the appellant until later, when it again complained that the shipments were not up to this standard. If it be true (and that was for the jury to find) that the vinegar shipped prior to May 9, 1912, was below the standard, and appellant objected thereto, yet nevertheless consented to go on with the deal upon the making of the supplemental contracts, this would afford sufficient consideration to support

4. SALES: contract: written modification of terms: consideration.

such later agreement. Moreover, it was entirely competent for the parties to agree to a change in the terms or words of their contracts, and that agreement having been reduced to writing, a consideration is presumed. Neither can it be doubted that, in making the supplemental agreement, the parties had in mind both outstanding written contracts;

for appellee says, in so many words, "You may treat this letter as a supplement to the existing contracts", using the plural form of the word; and, so far as appears, there is no pretense that any other contract between them than the two we have mentioned were then in existence. We are of the opinion, therefore, that, in so far as the supplement is a departure from the original agreement, it is to be held applicable to at least all deliveries thereafter made under either contract.

V. We come now to the central question presented by this appeal—the exceptions taken to certain instructions given the jury. The several instructions, 5, 6 and 6½, which we shall undertake to consider may be read and discussed in a single paragraph; for, in final analysis, the several rules or propositions of law therein laid down are reducible to one. They read as follows:

5. SALES: warranties: breach: express warranty surviving acceptance of goods.

"5. It appears without dispute that the defendant received into its possession the said four cars, to wit: Those shipped December, 1911, September 5th, 1912, September 19th, 1912, and May 28th, 1912, retained them and appropriated them to their own use. This alone would not in and of itself be *an acceptance by the defendant* of the vinegar so shipped *as being in compliance with the guarantee* of the defendant to furnish a six per cent. vinegar; if the defendant refused to *accept them or either of them as a compliance* with the plaintiff's contract, then it was its duty to give the plaintiff reasonably to so understand, and if it failed to so do within a reasonable time, the plaintiff would have a right to assume that such vinegar was *accepted by the defendant as a compliance with such contract.* What is a reasonable time within which defendant should have examined and signified its non-acceptance of either of said cars of vinegar is a question of fact for you to determine from all the evidence in the case, taking into consideration the evidence as to the nature and character of the vinegar, and the defects, if any, therein,

as well as all other facts and circumstances in evidence bearing on the question, if any. The burden of proof, however, is upon the plaintiff to show by a preponderance or greater weight of the evidence that the vinegar in either of such several cars was *accepted by the defendant as being in compliance with such contracts; the acceptance of such vinegar by the defendant as being in compliance with the contract* in question need not be made directly or in so many words, but may be inferred from the acts and conduct of the defendant with reference thereto, such as the use thereof by the defendant, the time lapsing between the receipt thereof and of notifying the plaintiff, if so, of his non-acceptance thereof, as well as the fact, if so, that an additional quantity was furnished by the plaintiff without charge to make up any deficiency in the quality of the vinegar so furnished, together with all the other facts and circumstances shown in evidence bearing on the question.

"6. If you find from the evidence, in view of all of the circumstances shown, that the defendant after the receipt of either of such cars of vinegar failed to notify the plaintiff of his non-acceptance of the same in compliance with the contract within a reasonable time, or find that the defendant actually accepted the said cars as being in compliance with the contract to furnish six per cent. vinegar although they were defective in some respects, then defendant would be estopped from now recovering any damages by reason of either of said cars so accepted or in regard to which he so failed to notify the plaintiff of its non-acceptance, although such car was defective in some respects.

"6½. The burden of proof rests on the defendant to establish by a preponderance or greater weight of the evidence the facts essential to its recovery; namely, that such cars were lacking in the essential qualities hereinbefore stated, the amount of damages, if any, sustained thereby, as well as that it notified the plaintiff of its non-acceptance of such cars

of vinegar as being in compliance with such contracts, in order to recover thereon.''

The proposition to which exception is taken is, in brief, that, upon delivery of each of the several shipments, the duty was cast upon appellant to examine the same; and if it claimed that the vinegar so received was not of the quality represented, and it was unwilling to receive the same as a compliance with the contract, it was bound to so notify the appellee; and a failure to give such notice within a reasonable time would constitute an estoppel to its right to the recovery of damages for any failure in the vinegar to comply with the terms of the appellee's ''guarantee''. This is stated in various forms, recurring in each of the several paragraphs.

Under the law of sales, as approved and applied in this state, one who buys goods, wares or merchandise upon an express warranty may, upon breach thereof, promptly notify the seller, tender back the property, rescind the sale and recover the consideration paid, if anything; or he may retain the property and recover his damages in an action on the warranty; or may recoup his damages by way of counterclaim in an action by the seller to recover the agreed price. So well is this settled that it hardly needs citation of authorities. But see *Rogers v. Hanson,* 35 Iowa 283; *Aultman v. Theirer,* 34 Iowa 272; *Case v. Haven,* 65 Iowa 359; *Myer v. Wheeler,* 65 Iowa 390; *Hoffman v. Ind. District,* 96 Iowa 319; *Callanan v. Brown,* 31 Iowa 333; *Aultman v. Ridenour,* 96 Iowa 638; *Laporte Imp. Co. v. Brock,* 99 Iowa 485.

If there be a breach of an express warranty, mere failure of the buyer to notify the seller thereof works no waiver or estoppel of his right to recover damages. Nor is he required to refuse to accept the property in order to preserve that right, unless there be some other stipulation of the contract of sale which requires such action on his part. A different rule applies where the warranty relied upon is implied and not express; also where the sale is by description rather than

by warranty, or upon an order by the purchaser to be filled by the seller. *Hirschorn v. Stewart,* 49 Iowa 418; *Minneapolis Co. v. Cowin,* 153 Iowa 129; *Allison v. Vaughan,* 40 Iowa 421; *Mackey v. Swartz,* 60 Iowa 710.

In cases of this class, where the buyer claims that the goods sent do not correspond with the order or description, the buyer must examine the property within a reasonable time and accept or reject it.  This reduces the inquiry in the present case to the question whether the provisions of the contract on which appellant relies constitute a warranty.  If so, the instructions were erroneous.  We have already said that the answer and counterclaim do plead a warranty, and what we have said in that connection need not be repeated, but the principle there affirmed may be emphasized or made clearer by a little further discussion in that connection.

That the undertaking in the contract is not a mere matter of description or representation, as distinguished from a warranty, is made very plain when we look to the definition which law writers of recognized authority have given for these terms.  Says Mr. Mechem, "Warranty is an express or implied agreement, collateral but annexed to the agreement to transfer the title, by which the seller undertakes to vouch for the title, quality or condition of the thing sold. . . . Warranty must be distinguished from representation.  Representation is an antecedent statement which is made to induce the entering into the contract, but which is not a term in or element of that contract.  Its purpose is accomplished when the contract is made.  Warranty, on the other hand, is, by the intention and agreement of the parties, a term in, a part of, or an incident to, that contract, and cannot exist without it."  2 Mechem on Sales, Secs. 1222, 1224.

6.  SALES: warranties: "warranty" and "representation" contrasted.

It would be difficult to put into words a clearer or more felicitous statement of a distinction over which lawyers and courts have sometimes stumbled.  With it in view, we have only to notice that, in this case, the undertaking to vouch for

the quality of the vinegar is, by the agreement of the parties, a term in and a part of the written contract, and is, therefore, a warranty, as distinguished from a mere representation. It is also a direct and positive affirmation of fact, as distinguished from a mere matter of opinion or judgment. A representation by the seller of leather that it is "thoroughly tanned" has been held a warranty (*Groetzinger's Sons v. Kann*, 165 Pa. St. 578). So of the description, "good saleable corn" (*Holloway v. Jacoby*, 120 Pa. St. 583) ; and the description "winter pressed spermaceti oil" (*Osgood v. Lewis*, 2 H. & G. (Md.) 495) ; and "prime singed bacon" (*Yates v. Pym*, 6 Taunt. 446) ; and "good milling wheat" (*Jack v. Des Moines & Ft. D. R. Co.*, 53 Iowa 399). And while it is true that a sale by description is often held to do no more than imply a warranty, the class of cases of which the above are examples shows that conformity to description may also become the matter of express warranty. In *Fairbank Canning Co. v. Metzger*, 118 N. Y. 260, we find a case quite in point with the one at bar. There, the plaintiff, a wholesale dealer in dressed beef, sold to defendant, for resale, a large quantity of beef, which was to be "clean, well dressed, in first class condition, thoroughly chilled before being loaded and not heated before being killed". Upon suit for the purchase price, defendant counterclaimed for damages because the beef was not as described or represented. The representation, having been carried into the contract, was held to be an express warranty. The contention of the plaintiff there, as here, was that the words were mere representation or description, and not a warranty, and that, the meat having been accepted and used, damages were not recoverable. In overruling the point, the court uses this language:

"The more recent cases hold that a positive affirmation understood and relied upon as such by the vendee is an express warranty. There can be no difference between an executory contract to sell and deliver goods of such and such quality and an executory contract to sell and deliver goods which the seller warrants to be of such and such quality. The former is as

much a warranty as the latter.''

With respect to the further claim that the acceptance and use of the meat acted as a waiver of objection to its quality, the court further says:

''It is undoubtedly the rule that, in cases of executory contracts for the sale and delivery of property, if the article furnished fails to conform to the agreement, the vendee's right to damages does not survive an acceptance of the property after opportunity to ascertain the defect, unless notice has been given the vendor, or the vendee offers to return the property. But where there is an express warranty, it is unimportant whether the sale be regarded as executory or *in praesenti;* for it is now well settled that the same rights and remedies attach to an express warranty in an executory as in a present sale. In such cases, the right to recover damages survives an acceptance, and the vendee is under no obligation to return the goods.'' See also 2 Benjamin on Sales (4th Am. Ed.), Sec. 1356; *Owens v. Sturges,* 67 Ill. 366.

The language of the plaintiff's written agreement is, in this respect, not open to construction. It is a direct and specific undertaking that the vinegar furnished shall be of a particularly specified quality. The defendant, as plaintiff knew, was buying for the purpose of resale; and it was necessary that the vinegar which it put upon the market should be of the kind and character to stand the test of the statute regulating such business; and plaintiff not only undertook in apt words to furnish defendant with vinegar of the particular quality named, but that its constituent parts should be such that, when reduced by the addition of a given proportion of water, it should conform to the statutory standard. If this be not an express warranty within the meaning of that word as defined by every recognized authority, it will be difficult indeed for the most expert lawyer to frame one.

It follows, as we have already suggested, that the instructions which we have above quoted cannot be sustained. As

this conclusion necessitates a reversal, and the other questions raised in argument are of minor importance, we shall not take time for their consideration. For the reasons stated, the judgment of the district court is reversed and the cause remanded for new trial.

Appellees have filed a motion to strike appellant's abstract, as being not in accordance with our rules and unnecessarily prolix. We are of the opinion that the abstract as a whole is not subject to the motion, but think much of the matter therein should have been omitted. It is therefore ordered that $20 of the cost of printing the abstract be taxed to appellant. All other costs of this court are taxed to the appellees.—*Reversed.*

DEEMER, C. J., EVANS and PRESTON, JJ., concur.