Shaw C. J.
delivered the opinion of the Court. We are clearly of opinion that the facts disclosed in this case do not show an actual total loss. The fact of actual submersion at the time of the offer of abandonment, is the only circumstance which distinguishes this case from others where the loss has been held to be partial, or where the question of constructive total loss has been held to depend upon the cost of repairing and restoring the vessel. But we think that the circumstance that a vessel is under water, is not of itself sufficient to convert a partial into a total loss.
It appears by the report, that the brig in question was a new and strong vessel, with a valuable cargo on board, and that she was about two miles from shore, when the abandonment was offered, her masts being still visible though not above water.
Some authorities say, we are aware, that a submersion, de facto, amounts to a total loss, but we think it would be difficult to maintain this position. For instance, a vessel might sink, whilst repairing and when her masts are out, so as to be wholly out of sight, and yet be under the control of the owner, so that when raised and pumped out, she will be as valuable as before. It will be admitted that where a vessel is sunk in the sea, it affords strong prima, facie evidence of total loss, because it would in general preclude all hope of recovering her.- We think therefore it comes to this, that submersion, like stranding, or other serious disaster, is to be taken in connexion with other circumstances, in determining whether the loss is or is not total. "These circumstances, among others, are, the depth of the water, the distance from shore, the condition of the bottom, whether soft or rocky, the roughness or smoothness of the sea, the season of the year, and whether the means of relief ate at hand. The ultimate question is, can she be raised *97 and repaired at a reasonable expense of time and money; as in case of stranding, the question is, can she be got off and repaired at a reasonable expense. And the question in either case must depend upon all the circumstances affecting it.
Emerigon, in the passage cited, says that a loss is total by submersion, where there is no permanent vestige of the ship. But what is a vestige ? If it is that which affords the means of recovery and restoration, whether visible or not, then such submersion, in his view, would not be a total loss. A ship may be wholly under water and out of sight, and yet perfectly within the control of the owner. There may be buoys and cables attached to her, by the aid of which, and by the application of proper means and skill, she may be raised and removed as effectually as if above water. Then what is the difference in the condition of such a vessel, and that of a vessel which has sustained a serious injury, and perhaps is made a wreck, but which from the effect of a buoyant cargo, or other circumstance, happens to remain afloat ? We think, therefore, that' we are to look not to any one single circumstance, but to the practical effect and operation of such circumstance, in connexion with others, upon the condition of the vessel.
It certainly would not be sufficient to avoid a total loss, to show that the damaged hulk of a vessel insured has been raised and brought in ; but the same consideration would apply to a vessel greatly damaged by perils of the sea, though she remains afloat. To repel the claim for a total loss, it must appear, that the ship remains a good and sound vessel, capable after reasonable repairs, of performing voyages and carrying cargoes ; but whether she is so or not, does not depend upon the single circumstance of submersion.
As the right of abandonment may throw upon the insurer the chances of the market, the facilities of abandonment ought not to be extended beyond the just and reasonable limits established by practice and by judicial decisions.
In the present case, it appears that the vessel had a cargo, which was not of a very heavy nature, that she lay light on the bottom, and that she was raised and brought to Boston for repairs. The repairs, independent of the general average, *98 were about $ 3900, and deducting one third new for old, $ 2600. The general average, being the cost of raising and bringing her in, was $ 1360, and the vessel was valued at $ 10,000.
There is a clause in the policy, common as we understand to all the policies of recent date made in Boston, that the assured shall not have the right to abandon the vessel for the amount of damage merely, unless the amount which the assurers would be liable to pay under an adjustment as of a partial loss, shall exceed half the amount insured.
Under this clause, considering the case as one not of actual-total loss, but of a loss, total or partial, according to the degree of damage, the principles of adjustment of partial losses are to be applied, the deduction of one third new for old, and other deductions and allowances made; and whether a constructive total loss or not, will depend upon the result of such adjustment, and upon the fact, whether upon such adjustment •the loss would exceed fifty per cent. It may seem hard, that the deduction of one third new for old, should apply to a new vessel on her first voyage ; but that rule is inflexible, adopted 'for wise practical purposes, and will generally do justice. In England that rule is not applied to a vessel on her first voyage, but here the rule is uniform, and applied without exception.
The next question is, whether the average expense of salvage is to be considered as part of the loss sustained, and we think it is. This was a sum paid for removing the vessel to a safe place, where she could be repaired. It was not technically a general average ; and was only to be regarded in nature of average, as the vessel and cargo happened to be so situated that they could be saved together, and the expense was very properly and equitably apportioned upon their respective owners, according to the relative value of each. Had there been no cargo, the whole expense must have been borne by the vessel. But in either case the cost of raising and bringing in, was a direct loss to the owner, and a direct damage occasioned by the disaster, and therefore to be computed in estimating the amount of that damage. The proper question in such case, is, taking the vessel as she lies, is she *99 worth getting up and bringing in to be repaired, and can this be done for half of her value. The expense therefore of saving is to be added to that of repairing, in order to come to a just result.[1]
Note. A new trial was granted on the ground that the verdict was against the weight of the evidence. The Court said that making the largest estimate for the deficiencies in the repairs, they could not see how the jury could have brought the actual loss and deterioration of the vessel to the sum of $ 5000, computing upon the rules and principles applicable to the adjustment of a partial loss.

 See Bradlie v. Maryland Ins. Co. 12 Peters’s Sup. Court R. 400; Reynolds v. Ocean Ins. Co. 22 Pick. 1913 Orrok v. Commonwealth Ins. Co. 21 Pick. 456