ALLISON, SMITH & JOHNSON V. VAUGHAN.

1. **Practice**: EVIDENCE: PRODUCTION OF PAPERS. The granting of a rule upon the opposite party for the production of papers is a matter resting within the discretion of the court. (Code, § 3685.)

2. **Evidence**: DAMAGES: WHEN TOO REMOTE. In an action to recover the price of a printing press, wherein the defense was that the press furnished did not correspond with the one ordered, evidence was offered tending to show what expense was incurred in securing contracts which were rescinded on account of the difference in the presses: *Held*, that such damages would be too remote to justify the admission of the evidence.

3. ——: ——: ——. Plaintiffs must have been shown to be under a legal obligation to furnish the press before evidence upon which to found a claim for damages would have been competent.

4. **Contract**: ABSOLUTE WAIVER. One who purchases an article which, upon delivery, is found not to comply with the terms of the order or to be defective, but who, nevertheless, retains and uses it without objection, is presumed to have waived the right to object and is bound to pay for it.

*Appeal from Pottawattamie District Court.*

MONDAY, APRIL 26.

THIS is an action upon an account containing one hundred and three items, amounting to $3905.24, with two items of credit, amounting to $550, for steam engine, boiler, printing press, type, fixtures and materials for publishing a newspaper. The answer was in general denial, and also set up overcharges upon certain items, a claim for damages of $2500, for failure to send the press of the style and size ordered, and for damages of $200, for defective engine and boiler, and $800 damages for failure to furnish the press as agreed, and for deficiencies and defects in the one furnished. There was a jury trial, and a verdict and judgment for plaintiff for $3303.24. The defendant appeals.

*Sapp & Lyman*, for appellant.

*Smith & Carson*, and *B. F. Montgomery*, for appellees.

COLE, J.—I. At the term of court when the cause was tried, the defendant filed his verified petition, asking for a rule upon the plaintiffs, requiring them to produce all letters and telegrams received by them from defendant, relating to the account sued upon. The court overruled the petition. By the very language of the statute authorizing such petition, it places the matter in the discretion of the court. Code, §§ 3685–6. We cannot say that the court erred. It appears from the record that plaintiffs do business in Cincinnati, Ohio; that this action was commenced and the petition filed March 29, 1873; that this petition for the rule was not filed till December 3, 1873, and that the verdict was rendered December 6, 1873. The court may have refused the rule because of the delay or negligence in asking for it, and the continuance of the cause which the granting of it might have made necessary. We cannot say, from the showing made, that there was any abuse of discretion.

**1. PRACTICE: evidence: production of papers.**

II. The evidence tended to show that the defendant ordered of plaintiffs a small cylinder Hoe press, 32x50; that the plaintiffs did not manufacture or deal in presses, but ordered them for their customers from Cottrell & Babcock, of New York; that upon making the order for defendant, the plaintiffs were informed that Cottrell & Babcock had not such a Hoe press as was ordered, but did have a 32x50 small cylinder Taylor press, with air springs, and in good order; that it was soon discovered by them that the size was 32½x46, and of this plaintiffs were advised, and they informed defendant of it, and thereupon he ordered that press *by wire*. During the trial, the defendant, as a witness for himself, was asked to "state what expense, if any, you incurred for this paper to solicit subscriptions and advertisements, and making contracts for the paper of the size you could print on a press 32x50, which subscriptions and contracts were repudiated by the parties by reason of your failure to start such a paper?" This was objected to by plaintiffs as irrelevant, immaterial and incompetent, and the objections were sustained. The same legal propositions arise upon sev-

**2. EVIDENCE: damages: when too remote.**

eral other like questions. The court did not err in refusing to allow the questions to be answered. The damages to which the questions refer, are too remote and uncertain in their relations to the subject matter of the contract; and, besides, there is no sufficient foundation laid by the evidence in the case, upon which to rest any claim for damages by reason of a failure to furnish any press—nothing to show that plaintiffs were under legal obligations to furnish a press at all.

III. There were seven instructions given and none refused. The first was not objected to at all. The second and third were objected to as being misleading. It is not necessary to set them out at length. In our view they are not vulnerable to the objection made, or any other. The fourth instruction relates especially to the contract for the sale of the press, and the liabilities of the parties thereon; and the only part of it complained of is the last sentence, to-wit: "But if plaintiff only undertook to order said press from Cottrell & Babcock, such an undertaking would not amount to a contract to sell the same to the defendant." We do not understand appellant's counsel to object to the law embodied in it, but that it has no support in the evidence. In this assumption, counsel overlook the testimony of C. H. Smith, that the press " was bought of Cottrell & Babcock for Mr. Vaughan, at his solicitation, he having written us that they had such a press for sale, and that it was the press he wanted; he had their printed list of second hand presses, and designated to us in his order just what he wanted;" and also the letters respecting it. A similar objection is also made to a sentence in the fifth instruction, and upon the same mistaken basis, as we read the evidence.

IV. The sixth instruction is as follows: " If you find that after the contract had been entered into between the parties, they agreed to substitute for said Hoe press a Taylor press, you will ascertain from the evidence whether such substitution was of a particular press of that kind, then in the hands of Cottrell & Babcock, or a substitution generally of a press of that kind, without reference to any particular press. If the former is the fact, the plaintiffs

4. CONTRACT: absolute waiver.

are not liable for defects in said press, unless they either war-ranted it free from such defects, or fraudulently represented. it free therefrom. But they would be liable for a failure to furnish any of the parts of said press, or any of the articles belonging to it. But if the arrangement was to substitute generally a Taylor press, in good order, and plaintiffs have furnished a Taylor press, not in good order, they are only entitled to recover therefor the reasonable value thereof, unless the defendant has waived the right to have the price reduced by receiving and retaining said press, knowing of its defects. If the defendant received the press substituted for the Hoe press, and has retained the same, knowing both the quality of the article furnished and the price charged therefor, without objecting either to the quality or price charged, he is estopped now from objecting to either."

We frankly confess, that at first view, the latter part of this instruction seemed to us objectionable—that the doctrine of estoppel could not apply to such a case, for that the element of acting to the prejudice of the party relying upon the conduct or silence·· as an estoppel, is wanting. But an examination of the authorities has satisfied us of the correctness of the instruction; but, probably the doctrine rests upon the idea of absolute waiver, rather than upon technical estoppel. In *Milner et·al. v. Tucker*, 1 Carr & P., 15, ( s. c. in 11 E. C. L. R., 300,) the action was in assumpsit for a chandelier, and said: " BURROUGHS, J. When the defendant received the chandelier and found it incomplete and inadequate to the room, he should have given the plaintiff notice immediately, and have returned it as soon as· he· could; but if a man take an article, and keep it and use it as his own, though it was not according to contract, he is bound to keep it and pay for it."

In *Cash v. Giles*, 3 Carr & P., 408, (s. c. 14 E. C. L. R., 372,) which was an action for the price of a threshing machine, the court said, " PARK, J. If the defendant meant to insist that this threshing machine was not a good one, and suitable to its intended purpose, it was his duty either to have immediately returned it, or to have given immediate notice to the plaintiff to fetch it away, as it was of no use; now, instead, of

that, he keeps it for several years. I am clearly of the opinion that, as he has done so, he has waived all objections to its goodness, and is bound to pay for it." To the same effect are the following cases: *Percival v. Blake*, 2 C. & P., 510, (s. c. 12, E. C. L. R., 241); *Hopkins v. Appleby*, 1 Starkie, 477, (s. c. 2, E. C. L. R., 475); *Kellogg v. Denslow*, 14 Conn., 411. (*i. e.*, 422); *Gilson v. Bingham*, 11 Am. Law Reg., 73, and cases cited. The seventh instruction embodied the same proposition of law as applied to the engine. The rule is different in actions for improvements made upon real estate. *Mitchell v. Wiscotta Land Co.*, 3 Iowa, 209, and cases cited. in COLE's edition.

The verdict is supported by the evidence and the instructions given.

AFFIRMED.