Mercantile Co. v. Graves.

THE CENTRAL MERCANTILE COMPANY v. WILLIAM F. GRAVES *et al., as Partners, etc., et al.*

No. 14,755. (88 Pac. 78.)

SYLLABUS BY THE COURT.

1. SALES—*Acceptance—Waiver of Defects in Quality.* The acceptance of merchandise without objection, where an inspection could be made, is a waiver of defects in quality, in the absence of a warranty surviving acceptance.

2. —— *Failure of Buyer to Inspect.* Where merchandise is sold subject to inspection after delivery and before acceptance, if the purchaser accept the property without making any objection and sell it upon the market he must pay the contract price, whether he actually inspected it or not.

Error from Reno district court; PETER J. GALLE, judge. Opinion filed December 8, 1906. Affirmed.

*Carr W. Taylor,* and *Prigg & Williams,* for plaintiff in error.

*George A. Vandeveer,* and *Frank L. Martin,* for defendants in error.

The opinion of the court was delivered by

GREENE, J.: The defendants in error brought this action on an account stated to recover a balance alleged to be due them from the plaintiff in error for lemons sold and delivered to it under a written contract. The petition contains a copy of the contract and the account stated, which shows a balance due plaintiffs of $—. It alleged full performance on their part of all conditions of the contract, and prayed for judgment. The contract pleaded reads as follows:

"All contracts made in triplicate copies.

"C. O. GRAVES, Bostonia.    "El Cajon, Cal., 11-24-190..
    "Sold IREY FRUIT CO.,    Terms spot cash.
                              Inspection...........
"Agents for Central Mercan-     Delivery, Irey's packing-
        tile Co.,                 house, El Cajon.
    Hutchinson, Kan.          Route...............
"Order No. ........          Car No. ........

"This contract includes prices named by seller and Irey Fruit Company, brokerage of —— cents per box. His entire lemon crop for the term of one year from date, said lemons to be picked carefully, regularly, and sizes to be $2\frac{1}{4}$ to $2\frac{1}{2}$ inches, as near as possible; any excess of larger or smaller sizes to be handled for his account. His lemon orchard to be cared for in such a manner that the fruit will be good keepers, clean and merchantable. Price to be $1\frac{1}{4}$ cents per pound, all alike.

"Seller, GRAVES BROTHERS.

"For buyer, IRA S. IREY, Agent.

"Seller sign yellow contract and return at once."

The answer contained a general denial and admitted the execution of the contract, but alleged that at the time it was entered into Irey, the defendant's agent, was a broker engaged in buying and selling fruit, and was at the time the plaintiffs' agent and broker to find a purchaser for their lemon crop and other fruits. The answer further alleged that while Irey, as defendant's agent, was receiving the lemons from the plaintiffs on its account he was also purchasing and receiving other fruits from the plaintiffs and was carrying a general

account with them, in which he kept the lemon account; that the defendant transmitted to Irey sufficient money to have paid its entire indebtedness to the plaintiffs if it had been properly applied on the plaintiffs' lemon account, but that it was improperly applied by plaintiffs, with the consent of Irey, upon Irey's general account with them; and that the defendant had fully paid, satisfied, and discharged the plaintiffs' account.

The defendant also filed a cross-petition alleging that the plaintiffs agreed that their orchard should be cared for in such a manner that the fruit would be "good keepers, clean, and merchantable"; that they were careless in caring for their orchards, by reason of which neglect the lemons produced were defective, not good keepers, and were unmarketable, and that they were affected with an interior rot which was not discernible by inspection, by reason whereof the defendant suffered great loss, and asked that it have judgment for the damages thus sustained.

The plaintiffs recovered judgment. Of the contentions that the court erred in overruling the demurrer to the petition, the motion to make the petition more definite and certain, the motion for judgment on the pleadings, and the demurrer to the plaintiffs' evidence, none is maintainable.

The court committed no error in sustaining the plaintiffs' demurrer to the evidence in support of the second and third counts in the defendant's answer. The second count did not state a defense. The fact, if it was a fact, that Irey was the agent of the plaintiffs to sell their fruit crop at the time he made the purchase of their lemons for the defendant, in the absence of any allegation of fraud or unfair dealing resulting prejudicially to the defendant, would not prevent the plaintiffs from recovering the contract price of the lemons sold by the plaintiffs and delivered to, and accepted by, the defendant. There was no allegation in this count,

nor evidence on the trial, of bad faith or any other improper practice by Irey in making the purchase.

The material allegations of the third count are that the money sent by the defendant to its agent, Irey, to pay for the lemons was improperly applied by the plaintiffs to the payment of an individual indebtedness of Irey to them, and that it had fully paid the plaintiffs for the lemons delivered to it by them. There was evidence that Irey was a fruit broker; that he purchased on his own account from the plaintiffs that year fruits other than lemons; that he kept a general account with them in which the lemon account was also kept, but there was no confusing of these accounts. They were kept on the same books, and, when asked to explain the manner of keeping the accounts, Irey testified:

"We had scale books with duplicate tickets to show the receipts of the fruit. I went through that book the end of each month and posted in my journal each item of fruit received, which was credited to the grower and charged to the Central Mercantile Company. As fast as the fruit was sorted, the culls were weighed back in this same scale book, and these items were credited to the mercantile company and charged to the growers. The discounts I arranged with the growers to charge back to them as the fruit was packed out. The off-sizes were discounts; twenty-five cents small off-sizes, fifty cents large off-sizes. Each man's fruit was packed by itself and a separate account kept as to sizes. Those sizes were charged to their account from the sales-book, where I entered all shipments."

There was no testimony that any of the money sent by the defendant to Irey to pay for the lemons was applied by the plaintiffs on Irey's individual account.

Another contention is that the agent, Irey, violated his authority, as expressed in the contract of purchase, in receiving the plaintiffs' lemons and *charging* them to the account of the defendant, and that therefore the defendant is not liable. The argument is that the contract of purchase provided that payment should

46—74 KAN.

be cash, and that this was an express denial of Irey's authority to purchase on credit. This is a misconception of the contract. The contract is one of purchase and sale, and not one of agency. It does not purport to limit or define the authority of the agent. The cash condition was inserted for the benefit of the seller and not as a limitation of the agent's authority, and is a condition that could be waived by the seller, and, if waived, would not relieve the purchaser from the performance of the contract assumed by it.

But it does not appear that this condition of the contract was violated by Irey, or waived by the plaintiffs. It appears to be true that each delivery of lemons was not paid for at the time of the delivery, but payments were made at such reasonable intervals, as the delivery and inspection progressed, as to be consistent with the idea that it was a cash transaction and inconsistent with the idea that it was a transaction upon credit. Irey, the agent of the defendant, was engaged as a fruit broker and operated a fruit warehouse at El Cajon, Cal., where the plaintiffs delivered their lemons to be washed, inspected, and by him accepted or rejected for the defendant. The culls, or the rejected lemons, were to be handled by the defendant on account of the plaintiffs. It is evident that this process takes time, and presumably the contract was made with reference to the process of handling lemons, and what was meant by cash, or "spot cash," as stated in the contract, had reference to payment to be made after the lemons were washed, inspected, selected, accepted, and weighed, and the culls disposed of. The itemized account indicates that this was the method pursued.

It is also contended that the court erred in giving that portion of instruction No. 6½ which reads:

"Such acceptance will render the defendant liable notwithstanding there may have been defective lemons delivered which were accepted because the defendant's agent neglected to properly inspect or test the same."

The words "such acceptance," used in this instruction, refer to the acceptances mentioned in instruction No. 6, and that instruction undertakes to state the contentions of the defendant under its cross-petition, to which statement there is no objection, and then proceeds:

"But if at the time of the accepting of the lemons defendant's agent knew of the defect, if there was any, or with the use of ordinary tests could have discovered the defects, the defendant cannot recover damages on account of lemons received under such circumstances."

Under the facts and circumstances of this case these instructions, read together, state the law as favorably to the defendant as it could ask. The contract was an executory one for the sale of lemons by description, to be grown in the future. While words of description may amount to a warranty, before they should be so held it must be made to appear clearly that they were so intended by the parties. (*Hastings v. Lovering,* 19 Mass. 214, 13 Am. Dec. 420; *Hogins v. Plympton,* 28 Mass. 97.) The agreement to care for the orchards in such a manner that the lemons would be "good keepers, clean, and merchantable" was not a warranty which survived the acceptance, and was not so intended, hence the provision for inspection before acceptance, and also the provision for the disposition by the defendant of those which would not pass inspection.

The defendant's counter-claim was not founded upon an executory contract, for the non-performance of its conditions, but upon an executed contract for the purchase of merchandise, after delivery and acceptance, to recover damages for its defective quality. There is no doubt of the rule that where merchandise is sold upon a warranty which survives acceptance, and upon receipt of the merchandise it is discovered that there is a breach of the warranty, the purchaser may retain the property and recoup on the warranty in an action for the price; but in the absence of such warranty, where

defects are so plain as to be discernible by ordinary observation, and where there is an opportunity to inspect the property, acceptance without objection will be conclusive upon the purchaser. (*M'Cormick v. Kelly*, 28 Minn. 135, 9 N. W. 675; *Day et al. v. Pool et al.*, 52 N. Y. 416, 11 Am. Rep. 719; *Gurney et al. v. Atlan. & G. W. R'y Co. et al.*, 58 N. Y. 358.)

"A purchaser is liable for the agreed price of goods accepted by him without objections after opportunity of inspection, in the absence of a warranty intended to survive acceptance." (*Schopp v. Taft & Co.*, 106 Iowa, 612, 76 N. W. 843, syllabus.)

"One who purchases an article which, upon delivery, is found not to comply with the terms of the order or to be defective, but who, nevertheless, retains and uses it without objection, is presumed to have waived the right to object and is bound to pay for it." (*Allison, Smith & Johnson v. Vaughn*, 40 Iowa, 421, syllabus.)

The parties contracted that the lemons should be inspected after delivery and before acceptance. Whether such an inspection could have been made as would have discovered the defects, if any existed, was a question of fact, and was submitted to the jury under proper instructions. Their general verdict answered this question in the affirmative. The opportunity was afforded to inspect the lemons and discover any defects that existed, and, if defendant did inspect them and discover the defects, if any existed, or if it neglected to make any inspection and accepted the lemons, the law presumes it waived any defects that may have existed. This rule should be applied in the present case with strictness. The vendors commenced to deliver the lemons in November, 1902, and continued to deliver them in small quantities and at different times until July 27, 1903. During this time the defendant was curing and shipping them by the car-load almost weekly, and made no objections to the quality. It speculated with the plaintiffs' lemons without objections during this long period of time, and, when sued

for a balance remaining unpaid, undertakes to defeat a recovery because the lemons were defective.

Several other contentions are made with reference to the instructions given, as well as to the rulings of the court in refusing to give certain instructions asked by the defendant. There was no prejudicial error committed by the court in any of such rulings. The judgment is affirmed.

All the Justices concurring.