## MINNEAPOLIS SELLING COMPANY, Appellee, v. R. N. Cowin & Co., Appellant.

**Sales:** BREACH OF WARRANTY: EXECUTORY CONTRACT OF SALE.  The
purchaser of goods with a warranty may retain the goods and
sue for breach of the warranty; but where the goods are de-
livered on an executory contract as to quality, the absence or
presence of which can be seen on inspection, the purchase is
without warranty, and acceptance without objection relieves the

seller of all responsibility as to quality: As where postal cards were ordered to be manufactured, and it was stated by the salesman that they would be of the quality of a card exhibited to the purchaser but made by another. The purchaser received and sold a large part of the cards without objection. *Held,* that the contract of sale was by description rather than by sample and that failure to make objection precluded the right to damages because of failure to correspond in quality with the card exhibited.

*Appeal from Blackhawk District Court.*—HON. F. C. PLATT, Judge.

MONDAY, NOVEMBER 20, 1911.

ACTION at law to recover the selling price of a quantity of post cards. There was trial to a jury, and at the conclusion of the testimony the court upon plaintiff's motion directed a verdict in their favor. From the judgment entered upon this verdict the defendants have appealed. —*Affirmed.*

*Courtright & Arbuckle* and *F. S. Merriam,* for appellants.

*Reed & Tuthill,* for appellee.

WEAVER, J.—At the date of the transaction out of which this litigation has arisen, the defendants were proprietors of a news stand in the city of Waterloo, Iowa, and plaintiffs were manufacturers and jobbers of post cards at Minneapolis, Minn. On May 3 and 4, 1907, plaintiffs' traveling representative called upon defendants and solicited their order for cards. On the day first mentioned defendants gave the solicitor an order for certain Christmas goods amounting to $62.70, over which, as we understand the record, there is no controversy. On the following day defendants gave him another order for 30,000 post cards. These cards were to be decorated with

colored pictures of specified views of scenery in and about Waterloo, to be copied from photographs obtained for that purpose. The cards were manufactured by plaintiffs and shipped in three separate consignments, namely, June 17th, July 1st, and November 19th, following the date of the order. The larger part of the cards was contained in the consignment of July 1st. Upon the account thus created defendants made payments as follows: August 22d, $50; October 14th, $50; and November 6th, $25. The remainder of $132.70 not being paid on demand therefor, this action was begun at law to recover the same.

Defendants admit giving the orders referred to, but alleged by way of counterclaim that plaintiff's agent negotiating with them for a sale of the post cards produced a sample of the kind of work which plaintiff could or would do for the defendants; that such card so exhibited was "of artistic quality and a character of card which would have been easily and readily salable on the market in Waterloo." They further allege that the cards when made and delivered to them "were imperfect and defective from the standpoint of salability, and the views represented thereon were dim and imperfect," by reason of which they were "inartistic, absolutely unsalable, and of no value whatever."

Giving the evidence its most favorable construction in support of the defense and counterclaim, it tends to show plaintiff's agent displayed to defendant one or more cards which had been made in Germany and said that the cards with which plaintiffs would fill the order given him would be as good or better than those of German make. The cards delivered upon this order, defendants testify, were plainly of quality and finish inferior to the German cards had in view at the time the order was given. The pictures were not composed of as many colors, and the colors were blurred or run together and less distinct in perspective than they should have been to equal the sample, and

according to defendants' testimony had little or no market value.

It is conceded, however, that defendants did sell and dispose of some 13,000 of them. No complaint of the quality or workmanship of the cards appears to have been made to plaintiffs until some time after the last small shipment made in November, 1907. Apparently in the latter part of December, 1907, this last consignment was reshipped to the plaintiffs without any letter of explanation; but plaintiffs refused to receive it. Indeed, no express objection or complaint of the character or quality of the cards is shown until after this action was begun.

The position taken by appellants is that upon the record so made the jury would have been justified in finding that plaintiffs warranted the quality and workmanship of the cards and that the cards were not in fact as warranted. Under such conditions they claim they are entitled to the benefit of the rule which permits a purchaser with a warranty to receive and retain the subject of the purchase and still preserve his right of action for a breach of the warranty. That there is a well recognized rule in this state to the effect here stated is not open to question. 2 Mechem on Sales, section 1811; *Manufacturing Co. v. Huiske,* 69 Iowa, 557; *Aultman v. Thierer,* 34 Iowa, 272.

The serious question at this point is whether, under the facts in the case as stated by defendants themselves, they come within the benefit of the principle which they invoke. Is any warranty shown? The cards which the plaintiffs were to deliver were not then in existence. They were yet to be printed and colored and put in completed shape for the market.

The agreement stated by defendants themselves in their testimony on the trial was in substance an agreement to manufacture and deliver certain specified described goods. Many courts, including this court, have been disposed to draw a distinction between executory contracts of this

character and ordinary executed contracts of sale and warranty, and to hold that representations which might sustain a claim of warranty in cases of the latter kind will in cases of the former class be treated not as warranties, but as what is sometimes denominated "sales by description." *Chandler v. Hopkins,* 4 M. & W. 399; *Allison v. Vaughn,* 40 Iowa, 421; *Hirshorn v. Stewart,* 49 Iowa, 418; *Mackey v. Swartz,* 60 Iowa, 710; *Schopp v. Taft,* 106 Iowa, 612; *Berthold v. Seevers,* 89 Iowa, 506; *Battery Co. v. R. R. Co.,* 138 Iowa, 369.

In cases of this kind it is held that the purchaser is required to inspect the goods, when delivered or tendered for delivery, and if he finds they do not conform in kind or quality or description to the terms of his order or contract he may refuse to accept them and so notify the seller. Failing to do so within a reasonable time, or proceeding to use or sell the property as his own after inspection has disclosed its nonconformity to his order, he is held to waive objection thereto and must pay the agreed price. The writer of this opinion is not impressed with the soundness of this distinction or the logical sufficiency of the arguments by which it is supported, but the court has been too long committed to it to justify us in overruling the numerous precedents to that effect. The most plausible ground for the distinction is in the proposition that an order given for property of a particular kind or description, and particularly where it is contemplated that the article is to be manufactured and prepared for the special purpose of filling the order, the undertaking of the seller with reference to the quality and description of the article is not so much a warranty as a condition precedent to the duty of the purchaser to accept it. If then, when the tender is made of an article differing in any respect from the one ordered, and the defect is plainly apparent upon examination, and purchaser does not insist upon the condition precedent and refuse to accept the tender as a ful-

fillment of the seller's contract, he is held to have admitted the sufficiency thereof and to waive his right to thereafter raise the objection, and the seller is entitled to recover the agreed price.

In *Berthold v. Seevers, supra,* which involves the question we are here considering, this court said: "When goods are delivered on an executory contract requiring a particular quality, the absence or presence of which can be seen on a mere view, in such case the purchase is without warranty, and acceptance without objection leaves the seller relieved of all responsibility for the goodness, quality, or fitness of the property." This fairly sums up the effect of our decisions applicable to the issue here submitted.

In this connection it should be said defendants testify that the inferior quality of the cards delivered to them was clearly visible from the first. They received them without objection or complaint and proceeded to sell nearly half of them before suggesting any dissatisfaction with the purchase. If the rule of our prior decisions is to be adhered to, the trial court did not err in holding it applicable to this situation.

It is to be remembered, also, that in this case the German card exhibited to the defendants was not in any proper sense a "sample," because, as we have noted, the cards to be sold were as yet unmanufactured, and no sample of them either as to kind or quality could be produced. It was rather an exhibit illustrating the quality or excellence of the work plaintiffs claimed they were able to do. The matter of artistic excellence or degree of artistic perfection, which is the question most insisted upon by the defendants, is so much a matter of taste, and taste is so much a matter of education and training, that a promise that a picture to be produced shall be "as good or better" than one which is referred to as a standard can hardly be more than a mere expression of opinion on which no one can be supposed to rely as a warranty.

Millions of the American people, who would look with more or less weariness upon the masterpieces of Raphael, Titian, Turner, and West, discover great merit in the highly colored supplements of their Sunday morning newspapers. Under the golden dome of a Western capitol is a specimen of the painter's art for which the people cheerfully paid many thousand dollars, but the writer has the word of an eminent Scotch-American that in his judgment "it is not worth fifty cents." The same canvas which appeals to one as an excellent portrait by Whistler will be readily recognized by another of less technical learning, but perhaps keener perception, as a graphic portrayal of a Western cyclone.

While the use of the word "warrant" or "warranty" is of course not essential to sustain such a defense or counterclaim, its absence is a circumstance of some significance, and, if the words actually employed are under all the circumstances clearly to be understood as mere expressions of opinion or boastful praise of an article yet to be manufactured, neither the court nor jury is at liberty to treat them as a warranty.

An examination of the record in this case leads us to the conclusion that no express warranty was shown, and that under the rule established by our own cases the facts presented do not call for an application of the law as to implied warranties.

It follows that the judgment of the district court must be *affirmed*.