W. H. HOOPES & SONS, Appellee, v. F. H. SIMPSON FRUIT COMPANY, Appellant.

SALES: Performance of Contract—Inspection Prior to Payment—Assumption of Dominion over Property. Full inspection by vendee of property, prior to paying therefor, as contemplated by an executory contract of sale of property by description, followed by assumption of full dominion thereover by vendee, relieves the vendor of all responsibility as to the goodness, fitness, or quality of the property. So held in a sale of apples.

*Appeal from Muscatine District Court.*—M. F. DONEGAN, Judge.

SATURDAY, MARCH 17, 1917.

REHEARING DENIED TUESDAY, JUNE 26, 1917.

ACTION to recover damages for breach of both an express and implied warranty, growing out of the sale of three carloads of apples by defendant to plaintiff. Defendant denied the alleged warranties, pleaded that plaintiff accepted the apples after inspection, and waived any warranty thereof. It also pleaded that plaintiff took possession of the apples without paying for the same, and thereafter, and after notice or knowledge of their condition, paid for at least two of the cars, and waived whatever warranty may have been made thereof. It also alleged that plaintiff never in fact paid for the apples, and that it had no right to rescind the contract for the purchase thereof, or to recover damages on account of the sale. On these issues, the case was tried to a jury, resulting in a verdict and judgment for plaintiff, and defendant appeals.—*Reversed.*

*D. V. & R. S. Jackson,* for appellant.

*J. F. Devitt,* for appellee.

DEEMER, J.—I.  Plaintiff is a copart-

SALES: performance of contract: inspection prior to payment: assumption of dominion over property.

nership, engaged in buying, selling and shipping fruit and vegetables, with its home office at Muscatine, Iowa, and defendant is a corporation engaged in the same business at Flora, Illinois. On October 13th, 18th and 22d, plaintiff ordered of defendant three cars of apples, one to be shipped to Ironwood, Michigan, another to Plainview, Minnesota, and the third to What Cheer, Iowa. It is claimed that each and every car was warranted and represented to be No. 1, good, merchantable, sound stock,

and further that, as both parties understood that the apples were for consumption as food, and plaintiff had no opportunity to inspect the same, there was an implied warranty that the same, when delivered, should be fit for the purpose intended. It avers that the apples as shipped did not correspond with either the express or implied warranty; that they were decayed and wormy and not suitable for food. We understand that the plaintiff does not claim to have rescinded the sale, but its claim is for damages suffered by it due to defendant's breach of warranty. We' shall notice the defenses as we proceed.

Defendant honored plaintiff's order, and shipped the goods to the points designated in the several orders. The goods were consigned to defendant's own order, and bills of lading for each car were issued to defendant's order, with the notation, "Notify W. H. Hoopes & Co." As plaintiff did its banking business at Muscatine, defendant drew its three drafts for the purchase price of the apples, attached bills of lading thereto, and forwarded them to the Muscatine State Bank for collection. Representing that it wished to inspect the apples before paying for them, plaintiff induced the bank, without the knowledge of defendant, to surrender the bills of lading to the plaintiff, but the drafts were not paid until afterward. The draft for the Ironwood car was paid November 14, 1914, and the drafts for the other two cars were paid on the day this action was commenced, when the amount thereof was turned over to the bank; but the bank was immediately garnished upon an attachment issued in this case, and defendant has never received the money. The first car was shipped to Ironwood, Michigan. The apples were there inspected by one Lobb, a local broker, acting for plaintiff, and sold and delivered to a customer at that point. As the customer claimed they were not as represented, they were finally sold to it at 90c per hundredweight, f. o. b.

Ironwood. Defendant received the following letter from the plaintiff with reference to this and other cars:

"Muscatine, Iowa, Oct. 31, 1914.

"F. H. Simpson Fruit Co., Flora Ill. Gentlemen: C. B. & Q. car No. 112863 was rejected at Ironwood, Mich., and we are having same sold on commission. Our people report very inferior stock with considerable rottage. We did not write you at the time of this rejection, thinking car would be better after they got into it.

"We yesterday received rejection on Illinois Central car 399984, and our customer sent us a sample of the apples by parcel post, which certainly are a bad lot. Our people at Darlington advised it would be hard to find a perfect apple in the whole car, and that nearly every apple is specked. Now we settled with our Sigourney people on car received there and took quite a loss, and our Sigourney customer was up to call on us, and told the writer that the car had a heavy shrinkage from rottage and specks. We expected a car of good orchard run apples, to be sound and free from rots.

"Car No. 6714 to Eyota, Minn., was rejected, and we sold same to Elkton, S. D., and don't know how we will come out on the new sale.

"These rejections from such widely separated parties would indicate that this stock must be very poor, and that rottage complained of by all parties must be in the car, and that your loaders have been running in some drops and rots, possibly in your absence, as we do not think you would countenance any such loading if you were present. We have asked our people to let us have full report on cars and will do what is right with them and will submit to you. We are working on a very close margin of 5c to 10c per cwt.

"Yours truly, W. H. Hoopes & Sons."

The car shipped to Eyota, Plainview, Minnesota, was

inspected by plaintiff's agent at that point, and, according to the letter, delivered to Elkton, South Dakota. This car was rejected by the buyer and abandoned to the railway company as worthless. The What Cheer car was resold to a man by the name of Reisman. On October 31, 1914, plaintiff notified defendant of the rejection of this car, and that it had adjusted the matter by allowing the purchaser a discount of 20c per hundred. The car shipped to Ironwood was paid for by plaintiff November 19, 1914. The agreed price for the car was as follows: $168.88 for the What Cheer car; $162.20 for the Plainview car; and $172.99 for the Ironwood car. Plaintiff claims that the Plainview car was worthless, and that it received nothing therefor.

There was sufficient testimony to take the case to the jury on the proposition that defendant misrepresented the character of the apples, or that there was a breach of warranty made before the sale, and that plaintiff suffered some damage on account thereof. But it is argued, first, that the court erred in not permitting defendant to show how and for what purpose plaintiff got the bills of lading without paying the drafts attached. During the trial, defendant offered to show that the bills of lading were surrendered by the bank to the plaintiff for the purpose of making an inspection of the apples, and that, pursuant thereto, an inspection was made by plaintiff, or its agent, before any complaint was made. We think this testimony should have been received.

The testimony shows that the bills of lading were turned over by the bank so that the apples could be inspected, and that plaintiff then guaranteed payment of the drafts; but there is no definite showing that the apples were immediately inspected, and defendant was deprived of the right to show that they were immediately inspected. The record also shows that plaintiff did not pay for the goods until long after it knew they were not as represented.

The offered testimony would have tended to show that the sale was by description, and that the vendee was entitled to examine the goods before accepting them, and, upon such examination, to receive or reject the same. And if, upon mere view, it can be determined whether or not the goods were of the kind described, the acceptance thereof by the vendee, or the disposition of the same as his own, amounts to a waiver of the defects, and he cannot be heard to complain.

We understand the law to be well settled that, when goods are tendered by the seller in performance of an executory contract of sale, and accepted by the buyer after opportunity of inspection, without objection, the purchaser is liable for the price agreed upon, unless there be warranty intended to survive the acceptance. *Allison v. Vaughan*, 40 Iowa 421; *Hirshhorn v. Stewart*, 49 Iowa 418; *Mackey v.. Swartz*, 60 Iowa 710.

The same doctrine applies where there is a breach of an implied warranty. See *Berthold v. Seevers Mfg. Co..* 89 Iowa 506. Of course, there may be a warranty which will survive the sale, and which may be enforced after delivery and acceptance of the property. But this usually applies to property subject to inspection, or definitely ascertained property which is the subject of sale.

Here there were no words of warranty, and no particular apples were the subject of a sale. Any which would answer the description could have been furnished by the seller, and plaintiff was not bound to accept any which were tendered him in performance of the agreement unless they complied with the description given of the apples. *Davidson v. Smith*, 143 Iowa 124, involved a specific car of melons to be delivered to the buyer at Des Moines for shipment to Webster City. No right of inspection was involved in that case, and the sale was treated as an executed one on delivery of the property to the carrier. In most of the

cases relied upon in support of a contrary rule, the purchase price was paid before inspection, or it was not paid at all. Here it was paid after full inspection and knowledge of the defects in the goods. Thinking that it had the right to, and that it was its duty to inspect, according to the offered testimony, it secured the bills of lading, made an inspection, and then, without giving any notice of its intended action to the defendant, handled the goods as its own; and, under the authorities, this relieved the seller from all responsibility as to the goodness, fitness or quality of the property. See cases hitherto cited, and *Allison v. Vaughan,* 40 Iowa 421; *Electric S. B. Co. v. Waterloo, C. F. & N. R. Co.,* 138 Iowa 369; *Minneapolis Selling Co. v. Cowin & Co.,* 153 Iowa 129. The last cited case goes over the ground quite thoroughly, and points out the distinction between this line of cases and *Upton Mfg. Co. v. Huiske,* 69 Iowa 557, and *Aultman v. Theirer,* 34 Iowa 272.

II. Defendant asked instructions along the lines heretofore suggested, which the court refused to give, and also excepted to the instructions because this issue was not submitted to the jury. While the testimony, by reason of the court's rulings, was not strong on this point, we think there was error both in the giving and in the refusal to give the instructions referred to.

III. Some reference is made to the fact that the trial court submitted the case as if there were both an express and an implied warranty, and that this was error. We find no exceptions which properly raise this question, and need give it no further attention than to say that the so-called implied warranty was stated to be practically the same as the express one, so that no prejudice resulted to defendant in any event. Some confusion is found in the argument in the use of terms. It is suggested that an express warranty necessarily means a written one. Of course, this is not true. An express contract of any kind may be

either oral or in writing. An implied one is never in writing, but grows out of the nature of the transaction.

Other matters need not be noticed, as they·are not likely to arise on a retrial. For the errors pointed out, the judgment must be, and it is,—*Reversed*.

The foregoing opinion was prepared by Justice Deemer, now deceased, and is adopted as the opinion of the court.

GAYNOR, C. J., LADD, EVANS and PRESTON, JJ., concur.