Wrot Iron Heater Company, Appellee, v. Sanders Furnace Company et al., Appellants.

**SALES:   Failure to Inspect as Precluding Counterclaim.**   The rule that,
1   when goods are furnished under an executory contract as to quality, and such quality is readily discernible on inspection, the buyer's failure to so inspect, and his retention of the goods without objection, preclude a subsequently asserted counterclaim for damages, *does not apply to a sale induced by false and fraudulent representations.*

**TRIAL:   Instructions—Absence of Evidence to Justify.**   An instruction
2   to the effect that, if a buyer failed to inspect goods and discover

their nonconformity to contract, he would forfeit his right to counterclaim for damages, is erroneous, when the applicable evidence manifestly demonstrates that no mere inspection would reveal such nonconformity.

*Appeal from Webster District Court.*—G. D. THOMPSON, Judge.

APRIL 7, 1921.

ACTION on account. Counterclaim by defendant. Verdict and judgment for plaintiff for the full amount asked, with interest. Defendant appeals.—*Reversed.*

*Healy & Faville,* for appellants.

*Price & Burnquist,* for appellee.

PER CURIAM.—Plaintiff is a corporation, organized and existing under the laws of this state, with its principal place of business in the city of Des Moines. The defendant Sanders Furnace Company is a copartnership, composed of H. S. Sanders, Edwin Sanders, and Robert V. Kent. Plaintiff alleged in its petition that, in pursuance of a written contract, entered into in December, 1915, to become effective January 1, 1916, a copy of which is set out in full in the record, it sold and delivered to the defendants, at Fort Dodge, a number of furnaces, parts, and repairs therefor, and that there is a balance due plaintiff of $2,712.63, with interest, for which sum judgment was asked. The defendant, for answer, denied all the allegations of the petition, and set up a counterclaim for damages, based upon certain false representations alleged to have been made by D. B. Howard, vice president and general manager of plaintiff, which, defendant alleged, induced it to enter into the contract and to purchase the furnaces and other merchandise set out in plaintiff's statement of the account. Appellant did not offer any evidence denying the correctness of the account as stated, but did offer evidence in support of the allegations of the counterclaim.

1. SALES: failure to inspect as precluding counterclaim.

Plaintiff is engaged in manufacturing and selling furnaces, and, by the terms of the contract in suit, it agreed to deliver a certain number of furnaces to a warehouse in Fort Dodge, to be

sold and installed by the defendant within certain prescribed territory, each furnace to bear the name "Sanders Wrot Iron Furnaces," and a plate reading, "Made for the Sanders Furnace Company, Fort Dodge, Iowa." The contract provided terms of shipment, price, and certain formalities to be observed in taking the furnaces from the warehouse. The furnaces, according to the testimony of H. S. Sanders, were to be as designed by defendants, the same to be worked out together by the parties.

The defendant alleged in its counterclaim that Howard represented and stated to the members of the copartnership, as of his personal knowledge, that the furnaces were manufactured out of old-fashioned wrought iron; that the gauge of the furnace head was Number 6; and that it would resist heat up to, and would not melt at less than, 3,600 degrees Fahrenheit; together with all other necessary allegations to make out a cause of action for damages for deceit. The plaintiff, in reply, denied the allegations of the counterclaim, and pleaded an estoppel, the grounds of which need not be stated. Nothing was allowed on the counterclaim.

But two alleged errors, both of which relate to instructions, are assigned by appellant, and, as the cause must be reversed, we discuss only one of them. .

The evidence shows that D. B. Howard, vice president and general manager of plaintiff corporation, who, it is alleged, made the representations complained of, was, for several years, in the employ of a company manufacturing so-called wrought iron furnaces at Oskaloosa, of which the defendant copartnership was a customer. In 1910 or 1911, the plaintiff corporation was organized and the manufacture of furnaces begun, either by it or by other concerns engaged for that purpose. Defendants purchased furnaces of plaintiff, prior to January, 1916, under a contract similar to that in controversy, and this contract was entered into in the fall of 1915. Prior to the date of that contract, furnaces were purchased by defendants under an oral arrangement. The contract in suit is silent as to the gauge quality of the material to be used, and as to the capacity of the furnace to resist heat. Testimony offered on behalf of the defendants tended to show that, before either of the contracts were entered into, Howard stated and represented to H. S.

Sanders, in the presence of other members of the defendant firm, that the furnaces were manufactured of old-fashioned wrought iron, and that the gauge of the furnace head was Number 6. The term "gauge" refers to the thickness of the material. No claim is made by plaintiff that any old-fashioned wrought iron was, in fact, put in the furnaces, or that the gauge of the furnace head was Number 6. It is conceded that it was Number 8, but it is claimed by plaintiff that the material out of which the furnaces were manufactured was within the general acceptation and meaning of the term "wrought iron."

Further testimony was offered by the defendants to the effect that, at the time the alleged false representations were made by Howard, he exhibited a sample of the material used in manufacturing the furnaces, together with an old-fashioned wrought iron nail, for the purpose of showing the greater durability and value of wrought iron. The furnaces, as already stated, were placed in a warehouse in Fort Dodge, and removed therefrom by the defendants as they were sold and needed for installation. A sample furnace, complete, was also furnished to the defendants. The court, in Paragraph 6½ of its charge, instructed the jury as follows:

"You are instructed that the agreement between the parties in this case was, in substance, an undertaking on the part of the plaintiff to manufacture and deliver certain described goods. In cases of this kind, it is held that the purchaser is required to inspect the goods when delivered or tendered for delivery, and if he finds they do not conform in kind or quality or description to the terms of his order or contract, he may refuse to accept them, and so notify the seller. Failing to do this within a reasonable time, or proceeding to use or sell the property after inspection has disclosed its nonconformity to his order, he is held to have waived objection thereto, and must pay the agreed price.

"In this case, the defendant is held to an inspection of the heaters furnished, upon delivery. If, upon inspection, it was discovered that said heaters were not in conformity with the alleged warranties or representations, the defendant waived all objections because thereof by continuing to accept and sell the same, and it cannot recover on its counterclaim.

"You are further instructed, however, that, if the character of such furnaces were such that the absence or presence of particular kind and quality of material of which they were constructed could not be seen by the defendants on a mere view of said furnaces, then the plaintiff would not be relieved of his liability to the defendants for the misrepresentations it made, if any you find it did make as to the kind and character of the materials of which said furnaces were or were to be constructed."

The exceptions of appellant are to the first paragraph of this instruction, and are, in substance, that the doctrine of the instruction is applicable solely to actions arising out of a breach of warranty of an executory contract. As already indicated, the contract in question did not contain an express warranty as to the gauge, kind, or quality of material used in the furnaces, and manifestly there was no implied warranty that the material used was old-fashioned wrought iron; that the gauge of the furnace head was Number 6 and not Number 8; or that the metal used would successfully resist heat under 3,600 degrees Fahrenheit. The language of the first paragraph of the instruction is substantially the same as that used by this court in *Minneapolis Selling Co. v. Cowin & Co.*, 153 Iowa 129. The correctness of the instruction as an abstract proposition of law is not challenged. Defendant's counterclaim was not based upon the breach of an implied warranty, but solely upon fraud and deceit alleged to have been practiced by Howard upon defendants, as set forth in the counterclaim. It was error for the court to give the first paragraph of the quoted instruction, for the reason that, if it appeared from the evidence that the defendants were induced by false and fraudulent representations, as charged in the counterclaim, to enter into the contract, without knowledge of the falsity of such representations, and the other necessary elements were established, the defendant Sanders Furnace Company would be entitled to recover whatever damages the evidence showed it entitled to, and would not be held to an inspection of the furnaces, as under an executory contract, and as set forth in the instruction. The principle announced in *Minneapolis Selling Co. v. Cowin & Co.*, supra, has no application to actions for damages based upon fraud, inducing execution of the contract.

Furthermore, it is obvious that a mere view of the furnace

would not have revealed the falsity of any of the representations alleged in plaintiff's petition. A chemical analysis, as shown by the evidence, was necessary to determine whether the material used in manufacturing the furnaces was old-fashioned wrought iron. The gauge of the furnace head could be ascertained only by the removal of a section therefrom and the application of an instrument used for the purpose of determining the gauge; and manifestly, the capacity of the metal to resist heat would have to be tested by some other method than a mere view of the furnace. The instruction was not based upon any evidence in the record, and for this further reason should not have been given.

2. TRIAL: instructions: absence of evidence to justify.

Complaint is made of one other paragraph of the court's charge; but, as we have already found that the judgment below must be reversed, we do not deem it necessary to consider other matters complained of. It follows that the judgment of the court below must be and is—*Reversed*.

FAVILLE, J., takes no part.