THE JEWELL BELTING COMPANY, Appellant, *vs.* THE HAM-
ILTON RUBBER MANUFACTURING COMPANY, Appellee.

*Opinion filed February 20, 1913.*

1. SALES—*when jobber's right of recovery from manufacturer is limited to damages for a breach of warranty.* Where a jobber, instead of refusing to accept defective belting, as it had a right to do under its contract with the manufacturer, ships the same to a customer at the suggestion of the manufacturer's agent, who agreed that the manufacturer would stand back of the belting because it had been guaranteed, the jobber's right against the manufacturer is limited to the recovery of such damages as it can prove it has sustained by the breach of warranty.

2. EVIDENCE—*when invoice containing word "defective" is not admissible.* In an action by a jobber to recover the contract price paid by it for a large quantity of belting which it is claimed was worthless, an invoice made by the jobber containing the word "defective," which invoice was sent by the jobber to the manufacturer with a small quantity of the belting returned by the jobber and for which the jobber was given credit, is not admissible in evidence as an admission by the manufacturer that the belting not returned was also defective.

3. SAME—*when letters are not admissible as evidence of fact that belting was defective.* Letters written by a jobber to a manufacturer stating the jobber's claims as to the belting being defective and what its customer said about the belting are not evidence of the fact that the belting was defective, and are not admissible as proof of such fact in an action by the jobber against the manufacturer to recover the price paid.

4. SAME—*what is not improper cross-examination of an expert.* Where an expert witness has testified that crooked belting would be inclined to run off the side of the pulleys and would transmit less power than a straight belt, it is not improper to draw out, on cross-examination, answers tending to show that belting might be somewhat crooked and still be all right when straightened out by stretching.

5. INSTRUCTIONS—*when plaintiff cannot complain of modification of instruction.* The plaintiff in an action to recover the contract price paid by it for goods claimed by it to be worthless is not entitled to complain of the modification of an instruction stating the plaintiff's rights under its contract, where the instruction, both before and after its modification, is more favorable to the plaintiff than the law, as applied to the undisputed facts, would justify.

APPEAL from the Branch "B" Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. ROBERT W. WRIGHT, Judge, presiding.

CHILTON P. WILSON, for appellant.

MONTGOMERY, HART & SMITH, for appellee.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

This suit was brought in the superior court of Cook county by appellant to recover money paid to appellee for belting alleged not to have been according to the contract of purchase and of no value. The appellee pleaded the general issue and a set-off of the balance of the purchase price. There was a judgment for appellee for $3613.98, from which the Appellate Court required a *remittitur* of $845.70 included as interest and affirmed the judgment for the remainder. The Appellate Court granted a certificate of importance and an appeal to this court.

The evidence showed the following facts: On February 24, 1900, the plaintiff, the Jewell Belting Company, doing business in Chicago as a jobber and retailer of rubber belting and other goods, gave an order to the defendant, the Hamilton Rubber Manufacturing Company, a manufacturer of rubber belting at Trenton, New Jersey, for 40,000 feet of five-inch, four-ply belting, which was to be in accordance with two samples submitted and to be perfect in material and manufacture, and if it should prove otherwise the defendant was to replace it without any expense to the plaintiff. The order was accepted and a roll of belting containing 338 feet was received about March 8, 1900, by the plaintiff. After cutting off a small piece of three or four inches that roll was immediately shipped, without examination, to the J. I. Case Threshing

Machine Company, at Racine, Wisconsin. The next shipment was of seven or eight rolls, and three or four rolls of that shipment were opened and the belting rolled out on the floor. Instead of lying flat the belting curved, the curving variously estimated at from three to eight feet in one hundred feet. The defendant had an office near the plaintiff, and Bast, the agent in charge, was called in. He found that the belting curved when rolled upon the floor, but said that he did not think the plaintiff would have any trouble with it and to go ahead and send it out. He agreed that if the plaintiff would go ahead and send out the belting to its customers the defendant would stand back of the belting, inasmuch as it was guaranteed to the plaintiff. The rest of that shipment was not examined and it was all shipped to the Case Company. Over 40,000 feet of the belting was received before the middle of May, and only seven or eight rolls, in all, were examined. On March 26, 1900, the plaintiff also ordered from the defendant a large amount of narrow belting one-and-a-half-inch by three-ply and two-inch by three-ply. About 50,000 feet of this narrow belting was shipped and was not satisfactory. The narrow belting was sold to plaintiff at 75-10 per cent discount from list, and the matter was settled by an agreement that it should be billed at 80 per cent discount. The Case Company returned some of the belting, both narrow and five-inch, and it was returned to the defendant. The belting returned amounted to $859.90, for which credit was given to the plaintiff. The narrow belting returned, the agreement for a larger discount and $2.30 allowed on the trial adjusted all matters respecting the narrow belting. The Case Company refused to pay the plaintiff for the five-inch, four-ply belting, but what became of it does not appear. There was no evidence as to its value or what the Case Company did with it. The plaintiff paid for the belting but retained money due on other accounts, and on February 21, 1901, the parties agreed that the plaintiff

should pay the defendant the account in full, except $2500 to be retained to secure the plaintiff on the claims made by the Case Company by reason of the belting being claimed to be defective, and the plaintiff was to use its utmost endeavors to settle with the Case Company in the interest of the defendant. There was no settlement with the Case Company, and that company still refusing to pay, this suit was brought.

The plaintiff was entitled, under the contract, to refuse to receive belting which was not perfect in material and manufacture, and all such belting was to be replaced by the defendant without expense to the plaintiff. Some rolls, on examination, were seen to be defective, but instead of availing itself of the right secured by the contract, the plaintiff, on the suggestion of Bast, agreed to ship the belting to its customers with the agreement that the defendant would stand back of the belting, for the reason that it had been guaranteed. The principal and material dispute between the parties is whether, under the agreement with Bast, the plaintiff could ship the belting to its customer, and if the customer alleged it to be defective and refused to pay for it, could on that ground refuse to pay anything. Whether if the Case Company had refused to receive the belting and had returned it to the plaintiff the plaintiff might have returned it to the defendant, as was, in fact, done with some of the belting, is not here involved, because, so far as appears, the Case Company accepted the belting but refused to pay for it because it was defective. The court adopted the view that the issue between the plaintiff and defendant was not whether the belting was satisfactory to the Case Company, but whether it conformed to the agreement between the parties as to the kind of belting to be furnished, and we regard that view as correct. The proposal of Bast, accepted by the plaintiff, amounted to an agreement that the plaintiff should dispose of the belting and the defendant would answer to plain-

tiff for any damages on account of a breach of the warranty. An acceptance would be implied from a re-sale of the belting, which would be inconsistent with the right of property in the defendant, and if the plaintiff disposed of the belting although there was a breach of the warranty, it could not wholly defeat the defendant's claim for the price. (*Wolf* v. *Dietzsch,* 75 Ill. 205; 1 Benjamin on Sales, sec. 144.) The plaintiff was entitled, under the agreement, to any damages occasioned by any breach of the warranty, but it offered no evidence which would furnish any measure of damages, and the court did not err in refusing to direct a verdict for the plaintiff for the amount sued for.

When the plaintiff returned some of the five-inch belting with the narrow belting, it sent to the defendant an invoice, on which was marked the word "Defective." The court permitted the return of the belting to be shown and that appellant received credit for it on its account but refused to allow the invoice to go to the jury with that word written upon it. It is argued that the paper was competent because the defendant, by receiving it and giving credit for that belting, admitted that it was defective. That admission was made as to that belting, but the admission had no tendency to prove anything respecting the other belting which was in controversy.

The court admitted in evidence, over the objection of the defendant, a great many letters written by the plaintiff to the defendant stating its claims and what the Case Company said about the belting, but afterwards struck out the letters. They were merely declarations of the plaintiff concerning its claims and the claims of the Case Company, and they were not evidence of the fact. The court did not err in striking them out.

An expert witness called by the plaintiff testified that crooked belting would be inclined to run off the side of the pulleys and would transmit less power than a straight

belt, and was asked if he ever knew of a pulley being manufactured for crooked belts. An objection was sustained to the question, and we cannot see that any harm was done or that an answer would have added anything to the testimony given. On cross-examination the witness was permitted to state that millwrights had pulleys or clamps to stretch belting before putting it on the pulley for use; that the purpose of stretching it was to keep it from stretching and getting loose after it was put in use, and that if it was not too crooked it would pull straight when stretched. It is argued that the cross-examination was improper, but we do not so regard it, since it tended to prove that belting might be somewhat crooked and still, when straightened out by stretching, would be all right.

The plaintiff tendered an instruction stating that if the goods were not in compliance with the contract and samples and were not accepted by the plaintiff, and the defendant requested that the goods be disposed of, then the defendant was estopped from claiming that the goods were accepted, and the disposing of the goods would not prevent the plaintiff from rescinding the contract of purchase. The court modified the instruction by making it a condition to the conclusion stated, that the jury should also believe, from the evidence and under the instructions, that the plaintiff was otherwise entitled to rescind. Complaint is made of the modification, but the instruction did not state the law either as offered or as given. It was more favorable to the plaintiff than the law, as applied to the undisputed facts, would justify. There is, therefore, no ground for complaining of the modification.

There is no other question calling for consideration, and in the absence of any evidence as a basis for damages on account of a breach of the warranty no other verdict could have been returned by the jury.

The judgment is affirmed.     *Judgment affirmed.*