Harry Hall and William Hall, Trading as Hall Brothers, Appellants, v. Fred J. Bergschneider and J. G. Bergschneider, Appellees.

Gen. No. 8,583.

October term, 1931.
1932.

Heard in this court at the
Opinion filed February 1,

HAIRGROVE & ABSHER, for appellants.

CARL E. ROBINSON, for appellees.

MR. JUSTICE SHURTLEFF delivered the opinion of the court.

In vacation during the February term, A. D. 1931, of the Morgan county circuit court, the appellants took judgment by confession on the promissory notes involved in this suit. At the same term the appellees filed their motion for leave to open the judgment and to plead to the merits. The circuit court granted the motion of the appellees, opened the judgment, stayed the execution and preserved the lien of the judgment and execution during the pendency of this suit.

In the month of April, A. D. 1930, Harry Hall and William Hall, partners, doing business as Hall Brothers, the plaintiffs below and the appellants here, by written contract sold to Fred J. Bergschneider and J. G. Bergschneider, the defendants below and the appellees here, a certain John Deere No. 5 combine. Four judgment notes, each in the principal sum of $407.50, were signed and given by the appellees for the combine. The notes were payable to Hall Brothers and contained the usual power of attorney for the confession of judgment.

Among other things the contract of sale contained a warranty, a part of which is as follows: "That all machines herein ordered are warranted to be well made, of good material and workmanship and to do good work when properly set up and operated according to directions furnished with each machine. Should any machine herein ordered fail to do good work, when operated as above, then immediate written notice shall be given to the seller and a reasonable time allowed to send a man to put the machine in good working order. The purchaser agrees to render necessary and friendly assistance in making said machine do good work. Failing then to make the machine do good work, same shall be subject to the order of the seller and the settlement made for the same shall be void."

The machine was later delivered by the appellants to the appellees and assembled and set up for action

by the appellants. The combine was a machine to be used for three different purposes, to wit: The harvesting and threshing of wheat, the harvesting and threshing of oats and the harvesting and threshing of soy beans. It is claimed it did not work satisfactorily for any one of these purposes; that the appellants were immediately notified and sent men to work on the machine at least a dozen times; that the machine was used very little for the threshing of oats and the same trouble was had in that work as was had in the threshing of wheat, the appellees claimed.

The harvesting and threshing of soy beans followed the other harvests. In this last work, it is claimed that the machine utterly failed.

As before, appellees gave immediate notice to the appellants and again men were sent to adjust and repair the machine repeatedly. Sometimes days were spent continuously in working on the machine. Men from the appellants, who were retail dealers, and men from the John Deere Company, the manufacturers, both came and worked on the machine repeatedly.

There was testimony tending to show that on October 10, 1930, after the machine had been repaired many times and it had failed to do good work and appellees had purchased another machine to save their crops, and had demanded back their notes at various times and tendered back the machine to appellants at different times, one of the appellants said to the appellees: "You go on and try it again . . . it will work when it is fixed." Three men came from the manufacturers and worked two or three days on the machine, changed several of the parts and put on some new parts. The machine was tried again by appellees, but, it is claimed, it would not work satisfactorily or do good work and they again tendered back the machine and demanded their notes.

The cause was tried by a jury and there was a verdict finding for appellees and a judgment that appel-

lants take nothing by reason of said notes and appellants have brought the record to this court by appeal for review.

Appellants deny that on October 10, 1930, or at any other time after that date, they, or either of them, asked appellees to try the machine again, but testify that at the meeting on October 10 or about that date, they stated to appellees that they would not take the machine back and cancel the notes, after appellees had used the machine during the entire season, and they reiterated the same statements to appellees at several times before appellees ceased to use the machine in cutting beans that fall; nevertheless, appellees continued to use the machine and cut soy beans with it up to and including October 30, 1930.

The father, J. G. Bergschneider, testified that he had no interest in the machine except to sign the notes for his boys, and it appears, by the proofs, that his three sons, Fred, Paul and Leo Bergschneider, were to run and operate the machine and have the earnings from the same and on August 2, 1930, Leo Bergschneider, one of the sons, paid appellants $300 from the earnings of the machine, which was indorsed upon one of the notes before the same was due, and which amount was later demanded back by appellees.

Various assignments of error are made in this case. Although the warranty provided that the machine in question should be made of good material and workmanship, yet by various rulings the court refused to permit appellants to show that the machine was made of good material and workmanship. This was error.

There was trouble in the operation of this machine, without question, but the proofs show that, whenever notified, appellants were diligent in attempting to repair any break or defect, and there is not much controversy but that appellants did everything that could be done in that behalf. There is a direct issue made in this case whether the machine did or did not do good

work when properly set up and operated according to directions furnished with each machine. It was a complicated machine and doubtless, as with all machines of that character, more or less repairing and care must be used to secure its operation in a good and smooth manner. This much is implied in the wording of the warranty.

It was shown by the proofs that appellee, J. G. Bergschneider, one of the signers of the note, merely signed for accommodation and that his three sons, Fred, Paul and Leo, operated the machine and were interested in the earnings of the machine. Leo Bergschneider paid $300 to appellants from these earnings on August 2, 1930, one month after the machine was delivered and had been in operation. The court, by its rulings, would not permit appellants to show under what arrangement or contract the three sons operated the machine. This was error, as it had a direct bearing upon the payment made upon the notes before they became due.

Appellees, in their pleadings, do not defend solely upon the breach of warranty contained in the contract, and this course is pursued probably because appellees did not comply with the terms of the contract of warranty and did not give any written notice to appellants that the machine failed to do good work. Appellees, in their third plea, allege that the consideration for the notes had wholly failed. To this plea appellants replied, among other things, ''that defendants did use said machine and operate the same during all of said season and received large profits and valuable considerations therefrom,'' to which replication a *similiter* was filed and the issue there joined became one of the issues in the case.

The proofs show that appellees harvested with this machine during the season of 1930 from July 1, to November 1, 300 acres of wheat, 200 acres of beans, 15 acres of oats and hulled a quantity of clover seed

for three or four parties. It was therefore error to deny appellants the right to inquire into the earnings of the machine. It may be that a written notice of defects, as provided in the contract, was waived as to all notices given prior to October 10, although a waiver is not pleaded; however, on appellants' theory of the case, no waiver of a written notice of defects could be claimed after that date. We make no finding on waiver of notice, however.

The court refused to give appellants' instruction marked number eleven as follows: "The court instructs the jury that by the second plea of the defendant a warranty in writing of the machine sold is pleaded and that by the said warranty the seller was to make the machine do good work and if it did not do good work it should be subject to the order of the seller and the settlement made for the same should be void; and that it is further provided in said warranty that there was no other warranty express or implied and the defendants therein aver that said machine was defective and not of good material or workmanship as guaranteed by said warranty and that it failed to do good work and that by reason thereof the notes sued on herein became and were void and of no effect. And the jury are further instructed that if the jury believe from a preponderance of the evidence in this case that the defendants did have trouble with said machine and that said machine did not do good work and that thereon the defendants had a right to return the machine and declare the notes void. Yet, if the defendants knew the work of the machine was not good and wished to return the same and declare the notes void, then the defendants were bound to so notify plaintiffs within a reasonable time. And if the jury further believe from the evidence that the defendants did not notify the seller that the machine was subject to seller's order within a reasonable time but thereafter kept and used the machine throughout the

harvest and the defendants paid to plaintiffs on August 2, 1930, three hundred ($300.00) dollars on a note given for the machine, after wheat harvest was over, and if the jury further believe that the defendants kept the machine and used the machine until the end of the season and did not tender the machine under the contract to plaintiffs and did not elect to declare the contract void within a reasonable time, the defendants will be held to have elected to keep the machine and pay for it at the agreed price and to have waived their rights to declare a forfeiture of the notes under the warranty set out in the second plea of the defendants.''

A part of the substance of this instruction was given in appellants' instruction number two, but number 11 was the only instruction which attempted to bring to the consideration of the jury the payment of $300 upon the notes more than one month after the machine was delivered. Whether this constituted an acceptance of the machine was a question appellants were entitled to have presented to the jury. *Illinois Glass Co. v. Ozell Co.*, 197 Ill. App. 626.

What we consider to be one of the major issues in this case, to which insufficient consideration was given in the lower court, is whether appellees used the machine after being notified by appellants that appellants would not accept the machine back and cancel the notes. There was testimony submitted on both sides of this question. Appellees attempt to explain the continued use of the machine by appellants' express request ''for another chance'' and for additional time ''to make the machine right,'' etc. Appellants deny this testimony and state that on or about October 10, 1930, and at other times before appellees ceased using the machine, they attempted to rescind and offered to return the machine and demanded back their notes and the money paid, but that appellants refused to accept the machine and cancel the notes, but in-

formed appellees that the notes would be entered in judgment, and that appellees requested that the litigation be friendly. If appellants' testimony on that issue is true, and appellees thereafter in any manner used the machine as owner, it constituted a full acceptance of the machine and appellees are liable on the notes.

In *Wolf Co. v. Monarch Refrigerating Co.*, 252 Ill. 491, 502, the court held: "It cannot well be contended that the appellant's continued use of the engine after May 26 did not constitute an acceptance of the plant unless the circumstances attending such use so qualified the act as to prevent its having the ordinary effect. The test was completed, the appellee had withdrawn its engineer, claimed to have performed its contract and was demanding payment. The plant was then tendered in satisfaction of the contract. If it conformed to the contract the appellant was bound to accept it. If it did not substantially conform to the contract the appellant had the right to accept or reject it, at its option. If it chose to retain and use the engine it thereby accepted the ownership of it. Any act done by the buyer of goods tendered in fulfillment of a contract of sale, which he would have no right to do if he were not the owner, constitutes, of itself, an acceptance of the goods. (2 Benjamin on Sales,—4th Am. ed.—sec. 1051; *Cream City Glass Co. v. Friedlander,* 84 Wis. 53; *Dodsworth v. Hercules Iron Works,* 66 Fed. 483; *Brown v. Foster,* 108 N. Y. 387; *VanWinkle v. Crowell,* 146 U. S. 42; *Chapman v. Morton,* 11 M. & W. 534.) Even though the appellant had determined to reject the plant, and though its letters to the appellee and its attorneys be regarded as sufficient notice, in writing, of such rejection, it could not retain possession of the property and use it for its own profit in its business and at the same time insist upon the rejection. The two things are utterly inconsistent. While the appellant is actually accepting and using the plant its words of rejection are unavailing. Where machinery

has been bought on approval, tried, found defective and unsatisfactory and notice of rejection has been given, and where, nevertheless, the vendee has continued to use the machinery, such use amounts to a waiver of the right to return the machinery and an election to accept it. *Fox v. Wilkinson,* 133 Wis. 337; *Palmer v. Banfield,* 86 id. 441; *Stutz v. Loyalhanna Coal Co.,* 131 Pa. 267; *Aultman v. Theirer,* 34 Iowa 272.'' This rule of law rendered certain of appellees' instructions, not made plain by the abstract, erroneous. The record does not make plain that the three sons of Bergschneider in the use and operation of the machine used due care and caution in following the book of directions furnished with each machine. There is testimony that some of them paid no attention to the book.

Other errors are pointed out by appellants which doubtless upon another trial will be corrected.

For the reasons stated, the verdict and judgment of the Morgan county circuit court is reversed and the case remanded for another trial.

*Reversed and remanded.*