Samuel C. Pirie, Appellee, v. Wallace E. Carroll, Appellant.

Gen. No. 48,088.

First District, Third Division.
December 14, 1960.
Rehearing denied January 4, 1961.

Aiken, O'Gallagher, McDonald & Schlax, of Chicago (Charles Rivers Aiken, Francis E. Schlax and Vincent D. McConnell, of counsel) for appellant.

John T. Garrity, of Chicago, for appellee.

MR. JUSTICE McCORMICK delivered the opinion of the court.

The trial court denied a motion made by Wallace E. Carroll, hereinafter referred to as the defendant, to open up a judgment by confession theretofore obtained against him by Samuel C. Pirie, hereinafter referred to as the plaintiff. The judgment was predicated on a note dated July 1, 1956, signed by the defendant and payable to the plaintiff in the sum of $11,500. The defendant in support of his motion to vacate filed three affidavits together with a considerable amount

of correspondence between the parties. No counter-affidavits were filed.

From the somewhat confused record before us we can deduce the following facts: On or about July 1, 1955 the defendant purchased a herd of cattle from the plaintiff for $50,000. A cash payment of $17,000 was made, and the balance was to be covered by the defendant's notes payable to the plaintiff. The note on which the judgment was confessed, dated July 1 1956 in the sum of $11,500, was given by the defendant in consideration for the forbearance of the plaintiff in not enforcing collection of a note executed by the defendant and payable to the plaintiff in the sum of $16,500, which note had been given in partial payment for the purchased cattle. At the time the herd was purchased the plaintiff represented and warranted to defendant that all of the cattle were free of the disease commonly known as "Bang's disease," and that while 15 of the cattle would appear as reactors to the disease this was due to the fact that they had recently been vaccinated and the reaction would clear up shortly. The defendant had the cattle tested for Bang's disease by a veterinarian who reported an additional number of the herd reacted positively to the test. The defendant slaughtered for his own consumption at least one of the cattle and sold 33 head of the cattle for slaughter. At the time of the purchase the defendant bought them from the plaintiff for the express purpose of breeding and resale as breeding stock, which fact was at the time well known to the plaintiff.

█ No oral evidence was presented to the court, and the court decided the case solely upon the motion, affidavits and correspondence included in the record, and upon argument of counsel at the hearing before him. At the time when the court entered the order denying the motion to vacate the judgment he stated as reasons therefor that he found that the note dated July 1, 1956 "was executed by the defendant with the

183

full knowledge of the alleged condition of the cattle, which the defendant contends was the consideration for said note," and from the arguments of counsel the court found "the consideration for the note sued on was the forbearance of the plaintiff in not enforcing collection of a note executed by the defendant and payable to the plaintiff in the amount of Sixteen Thousand Five Hundred Dollars ($16,500.00) dated July 1, 1955." There is no denial anywhere in the record that the court's statement with reference to the circumstances surrounding the execution of the note of July 1, 1956 was correct. Forbearance on the part of the plaintiff constitutes sufficient consideration for the note of July 1, 1956. 7 Am. Jur., Bills and Notes, sec. 243; 28 I.L.P., Negotiable Instruments, sec. 53; Barzantny v. Cullen, 287 Ill. App. 440, 5 N.E.2d 247; Cusanelli v. Steele, 287 Ill. App. 490, 5 N.E.2d 296; Weiland v. Weiland, 297 Ill. App. 239, 17 N.E.2d 625.

In our opinion the trial court could have properly found from the record that at the time of the execution of the note on which judgment was confessed the defendant had knowledge of the diseased condition of the cattle. In the defendant's supplemental affidavit he states that "on December 28, 1955 the affiant wrote Samuel C. Pirie advising him he was still unaware of the value of said herd because of the presence of 'Bang's disease,'" and in the same affidavit the defendant states that he, after delivery of the cattle, "was not satisfied with the physical condition of said cattle" and that he had telephone conversations with the plaintiff, the exact dates of which were then unknown to the defendant, and that in such conversations he advised plaintiff "of his dissatisfaction with the condition of said herd." He further stated that subsequent to the letter of December 28th he had further conversations with the plaintiff and during the course of a conversation "advised the plaintiff that the condition of the herd was not as warranted to him

184

at the time of the sale and he insisted that an adjustment be made in the purchase price of said herd." The ruling of the trial court was not in error.

The defendant relies on the breach of an express warranty on the part of the plaintiff that the cattle were free from Bang's disease.

The consideration for the first note, which was replaced by the 1956 note, was the transfer of the title to the cattle. At the time the contract was entered into the plaintiff made an express warranty. Under the Uniform Sales Act (Ill. Rev. Stat. 1959, chap. 121½), there are certain rights given to the buyer when there is a breach of warranty. Section 69 provides that under such circumstances the buyer may elect to accept or keep the goods and recoup against the seller in diminution or extinction of the price, or bring an action against the seller for damages for the breach of the warranty. The measure of damages is the loss directly and naturally resulting in the ordinary course of events from the said breach. The buyer may elect to rescind the sale and if the goods have already been received, return them or offer to return them to the seller and recover the price or any part thereof which has been paid. Where the goods have been delivered to the buyer he cannot rescind the sale if he knew of the breach of warranty at the time he accepted the goods, or if he fails to notify the seller within a reasonable time of the election to rescind, or if he fails to return or offer to return the goods to the seller. When he is entitled to rescind the sale and elects to do so he shall cease to be liable for the price upon returning or offering to return the goods.

■■ In this case the defendant did not either return or offer to return the goods. After he had knowledge of the diseased condition of the cattle he sold certain of the cattle for slaughter. Any act done by the buyer of goods tendered in fulfillment of a contract of sale which he would have no right to do if he were

185

not the owner constitutes in itself an acceptance of the goods. Fred W. Wolf Co. v. Monarch Refrigerating Co., 252 Ill. 491, 502, 96 N. E. 1063; Jewell Belting Co. v. Hamilton Rubber Mfg. Co., 257 Ill. 238; Hall v. Bergschneider, 265 Ill. App. 118; Steinberg v. Schwartz, 219 Ill. App. 138. The defendant here accepted the cattle. He did not elect to rescind the contract, hence under the Act he was relegated either to a suit against the seller for damages or to recoupment in case suit was brought by the seller. In Underwood v. Wolf, 131 Ill. 425, 23 N. E. 598, the court lays down the rule that a claim for damages on account of a breach of warranty will survive the acceptance and retention of the property, and that in the case of a suit for the sale price the purchaser may offset against the plaintiff's claim such damages as were sustained from a failure to fulfill the warranty. This is the same rule laid down in the Uniform Sales Act. In the second supplemental affidavit filed by the defendant on May 6, 1959 it is made clear that the defendant is claiming for damages allegedly caused by the breach of the warranty.

Prior to the adoption of the Civil Practice Act in 1933 it was held that a judgment by confession would not be opened to permit the defendant to file a set-off, counterclaim or cross-action. Stead v. Craine, 256 Ill. App. 445; Smysor v. Glasscock, 256 Ill. App. 29. In Busse v. Muller, 295 Ill. App. 101, 14 N.E.2d 669, the court said:

> "A counterclaim or cross-demand, whether in the nature of a set-off, recoupment, cross-bill in equity or otherwise, is not a defense on the merits to a demand of one or more plaintiffs against one or more defendants, and, for that reason, a judgment will not be opened up to permit a defendant to file a counterclaim."

In State Bank of Blue Island v. Kott, 323 Ill. App. 27, 54 N.E.2d 897 (1944), the Appellate Court for the First District held that since the passage of the Practice Act in 1933 a judgment by confession could be opened up to permit the filing of a counterclaim. In Bankers Bldg., Inc. v. Bishop, 326 Ill. App. 256, 61 N.E.2d 276, the Appellate Court for the First District reverted to the former rule, and a petition for leave to appeal was denied by the Illinois Supreme Court, and in 66 Sup. Ct. 1352 certiorari was denied by the United States Supreme Court. Supreme Court rule 23, as adopted in 1955 and effective January 1, 1956, provides that the defendant may assert any counterclaim if an order is entered opening the judgment, but not otherwise.

In this case the claim of the defendant could only be asserted by a separate suit or by way of recoupment. In Luther v. Mathis, 211 Ill. App. 596, the court says:

> "A set-off is a counter demand which defendant holds against plaintiff, arising out of a transaction extrinsic of plaintiff's cause of action, and unliquidated damages may not be the subject of a set-off. Recoupment is in the nature of a cross-action, where defendant alleges that he has been injured by a breach by plaintiff of another part of the contract on which the action is founded . . . . Recoupment can only extinguish the plaintiff's cause of action."

Section 38 of the Practice Act (chap. 110, par. 38) provides: ". . . any demand by one or more defendants against one or more plaintiffs, or against one or more codefendants, whether in the nature of setoff, recoupment, cross-bill in equity, cross demand or otherwise . . . may be pleaded as a cross demand in any action, and when so pleaded shall be called a counterclaim." Provisions such as this are common in plead-

187

ing codes. See Clark on Code Pleading, Second Edition, pp. 639 et seq. The defendant may either bring his claim before the court under the provisions of the Practice Act by way of counterclaim or may file a separate action. Under the law the defendant could not have had the court open the judgment solely for the purpose of entertaining his claim of damages by reason of the breach of warranty on the part of the plaintiff.

 Proceedings to open or vacate a judgment by confession must be in accordance with rules. Moore v. Monarch Distributing Co., 309 Ill. App. 339, 32 N.E. 2d 1019. A motion to open a judgment by confession is addressed to the court's sound legal discretion, and unless an abuse of that discretion is shown the court's action will not be disturbed. Vella v. Pour, 329 Ill. App. 355, 68 N.E.2d 631; 23 I.L.P., Judgments, sec. 195. In this case the court did not abuse its discretion.

 This case was controlled by the rules of the Municipal Court of Chicago, which court has the power to adopt rules differing from the provisions of the Civil Practice Act. Ptacek v. Coleman, 364 Ill. 618, 5 N.E.2d 467. The rule of the Municipal Court (sec. 23 of rule 2) dealing with vacating and opening judgments by confessions differs from Supreme Court rule 23 in certain respects, though the greater parts of the rules are substantially the same. The Municipal Court rule provides in part:

"(3) If an order is entered opening the judgment, the defendant may assert any counterclaim.

"If a defendant files a motion supported by affidavit . . . which does not disclose a defense to the merits but discloses a counterclaim against the plaintiff and the defendant has been diligent in presenting his motion, the court *may permit* the filing of the counterclaim and stay all pro-

188

ceedings on the judgment by confession until the counterclaim is disposed of. . . ." (Italics ours.)

Under that provision, had the proper request been made in the trial court, that court could have permitted the filing of a counterclaim and stayed proceedings on the judgment by confession until the counterclaim action was disposed of and then entered an appropriate judgment. No such request was made by the defendant in the trial court, nor has the defendant raised the point before us.

The order of the Municipal Court of Chicago is affirmed.

Affirmed.

SCHWARTZ, P. J. and DEMPSEY, J., concur.